**Stella FUZIE, Plaintiff,**

v.

**MANOR CARE, INC., et al., Defendants.**

**Civ. A. No. C77–265.**

United States District Court, N. D. Ohio, E. D.

July 5, 1977.

---

H. M. Cochran, Jr., Charles M. Delbaum, Marley Ford Eiger, Gordon J. Beggs, American Civil Liberties Union, Cleveland, Ohio, Toby S. Edelman, National Senior Citizens Law Center, Washington, D. C., Neal S. Dudovitz, Gill W. Deford, Sally Hart Wilson, National Senior Citizens Law Center, Los Angeles, Cal., for plaintiff.

John R. Gall, Squire, Sanders & Dempsey, Cleveland, Ohio, Joseph E. Casson, Malcolm J. Harkins, III, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., for defendants Manor Care, Inc. and Manor Care of Willoughby, Inc.

Terry L. Tataru, William J. Anderson, Columbus, Ohio, for defendant Kwegyer Aggrey.

## MEMORANDUM AND ORDER

KRUPANSKY, District Judge.

This is an action instituted pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983; and Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, and regulations promulgated thereunder, wherein the plaintiff, Stella Fuzie, a Medicaid recipient resident at the private nursing home owned and operated by defendant Manor Care of Willoughby, Inc. (Manor Care), seeks to enforce the provisions of certain regulations promulgated under the Medicaid Program by the Secretary of Health, Education and Welfare (the Secretary) on behalf of herself and all persons similarly situated, against

defendant Manor Care, a qualified provider of Medicaid services, and defendant Kwegyer Aggrey, Director of the Ohio Department of Public Welfare (ODPW), as the state official charged with the administration of the Ohio Medicaid Plan. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

Defendant Manor Care has moved the Court to dismiss this action against it for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1), Fed.R.Civ.P., and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) thereof.

A review of the pleadings and exhibits herein discloses that Manor Care is currently a party to a contract with the ODPW whereby Manor Care is reimbursed for providing skilled and intermediate level nursing care and services to Medicaid recipients. The plaintiff was admitted as a Medicaid patient to Manor Care of Willoughby, the defendant's nursing home, on February 6, 1976, and is presently a Medicaid recipient certified to require intermediate-maximum level care.

The plaintiff contends that Manor Care has commenced a systematic program of transferring or discharging from its nursing home all patients who are Medicaid recipients with the exception of those who became eligible for Medicaid assistance subsequent to exhausting their assets as private patients; the transfers or discharges are allegedly being effected for other than medical reasons.

The Amended Complaint charges that Manor Care has notified the plaintiff's guardian *ad litem*, Irene Fuzie, of its intention to transfer or discharge the plaintiff from Manor Care of Willoughby, and that it thereby threatens her with immediate, permanent and irreparable harm to her health, in violation of regulations promulgated by the Secretary with respect to skilled nursing care facilities at 20 C.F.R. § 405.-1121(k)(4), incorporated into the Medicaid regulations at 45 C.F.R. § 249.33(a)(1):

(k) Standard: Patients' rights. The governing body of the facility establishes written policies regarding the rights and responsibilities of patients and, through the administrator, is responsible for development of, and adherence to, procedures implementing such policies. These policies and procedures are made available to patients, to any guardians, next of kin, sponsoring agency(ies), or representative payees selected pursuant to section 205(j) of the Social Security Act, and Subpart Q of Part 404 of this chapter, and to the public. The staff of the facility is trained and involved in the implementation of these policies and procedures. These patients' rights, policies and procedures ensure that, at least, each patient admitted to the facility:

\* \* \* \* \* \*

(4) Is transferred or discharged only for medical reasons, or for his welfare or that of other patients, or for non-payment for his stay (except as prohibited by titles XVIII or XIX of the Social Security Act), and is given reasonable advance notice to ensure orderly transfer or discharge, and such actions are documented in his medical record; 20 C.F.R. § 405.-1121(k)(4).

A similar requirement is imposed upon intermediate level care facilities at 45 C.F.R. § 249.12(a)(1)(ii)(B)(4):

(a) The standards for an intermediate care facility (as defined in § 249.10(b)(15) of this part) which are specified by the Secretary pursuant to section 1905(c) and (d) of the Social Security Act and are applicable to all intermediate care facilities are as follows. The facility:

(1) Maintains methods of administrative management which assure that:

\* \* \* \* \* \*

(ii) There are written policies and procedures available to staff, residents, their families or legal representatives and the public which:

\* \* \* \* \* \*

(B) Ensure that each resident admitted to the facility:

\* \* \* \* \* \*

(4) Is transferred or discharged only for medical reasons or for his welfare or that of other patients, or for nonpayment for his stay (except as prohibited by the title XIX program) . . . .

Medicaid is a joint federal-state program providing medical assistance benefits to qualified recipients under Title XIX of the Social Security Act, as amended (the Act), 42 U.S.C. §§ 1396–1396i, and regulations promulgated by the Secretary at 20 C.F.R. pts. 246–250.

Pursuant to Title XIX, the federal government reimburses qualifying states for a portion of expenditures made by such states for certain medical care and services provided to eligible recipients by qualified providers, 42 U.S.C. § 1383c. In order to qualify for federal reimbursement, a state must satisfy requirements regarding recipient eligibility, the scope of care and services provided, and provider certification, among other things, by means of an approved state plan for medical assistance, 42 U.S.C. § 1396a.

The state then contracts with qualified providers of services, such as defendant Manor Care, which in the case of skilled nursing care facilities must satisfy the requirements of § 1861(j) of the Act, 42 U.S.C. § 1395x(j), pursuant to Title XIX § 1902(a)(28), 42 U.S.C. § 1396a(a)(28), and the regulations promulgated by the Secretary at 20 C.F.R. § 405.1101–.1137 pursuant to § 1861(j)(15) of the Act, 42 U.S.C. § 1395x(j)(15). Standards with respect to intermediate care facilities are established pursuant to § 1905(c) of the Act, 42 U.S.C. § 1396d(c), at 45 C.F.R. § 249.12.

Sections 1861(j)(15), 42 U.S.C. § 1395x(j)(15), and 1905(c), 42 U.S.C. § 1396d(c), both contemplate state regulation and implementation of the federal program and its requirements with respect to qualified providers. The regulations establishing the standards for payment for skilled nursing facility and intermediate care facility services are set forth at 45 C.F.R. § 249.33, and provide for a comprehensive scheme of state regulation of such facilities pursuant to the state plan. The

regulations promulgated by the Secretary under § 1861(j) of the Act, 42 U.S.C. § 1395x(j), with respect to skilled nursing facilities at 20 C.F.R. subpt. K are incorporated into the regulations establishing the standards for administration of the Title XIX state plan at 45 C.F.R. § 249.33(a)(1).

Pursuant to O.R.C. § 5101.51, the ODPW provides medical assistance under Title XIX of the Social Security Act to recipients such as the plaintiff qualified under state and federal law, by means of a program required to conform to the Social Security Act, O.R.C. § 5101.51(A). The ODPW administers Ohio's approved state plan and has promulgated rules and regulations pursuant thereto, including a Medicaid Handbook and a Public Assistance Manual. Qualified providers are required to abide by these rules and regulations as a condition of their provider agreements with the state to provide Medicaid services.

The federal regulatory requirements with respect to the administration of the provider facility, 20 C.F.R. subpt. K, are incorporated by reference into the Ohio Plan. Payments under Medicaid are made on a reimbursement basis: pursuant to 42 U.S.C. §§ 1383c, 1396a, and 1396b, the federal government reimburses a participating state for a percentage of sums which have been expended by it through the program. Under federal law, 42 U.S.C. § 1396a(a)(13)(E) and 45 C.F.R. § 250.-30(a)(3), and state law, O.R.C. § 5101.-51(A)(1) and the State Plan, the provider facilities are reimbursed by the state for services which have been rendered under the program.

In providing funds to assist participating states to furnish necessary medical services to qualified individuals, see Title XIX § 1901, 42 U.S.C. § 1396, Congress has established an administrative structure which provides, inter alia, for state assistance of Medicaid recipients receiving care or services in "private or public institutions," see Title XIX § 1902(a)(9)(B), 42 U.S.C. § 1396a(a)(9)(B). The plaintiff asserts that by virtue of defendant Manor Care's voluntary participation in the Medicaid program

through a contract with the State of Ohio and its certification as a provider of Medicaid services by the federal and state governments, the nursing home's proposed transfer or discharge of the plaintiff constitutes action under color of state law, 42 U.S.C. § 1983, and state action within the meaning of the Fourteenth Amendment to the Constitution, as required to render defendant Manor Care liable to suit thereunder. This concept of state action "has been found to be virtually synonymous with the 'under color of state law' requirement of § 1983, *United States v. Price*, 383 U.S. 787, 794–95 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966);" *Turner v. Impala Motors*, 503 F.2d 607, 609 (6th Cir. 1974).

A determination of the presence or absence of state action in the challenged conduct of defendant Manor Care requires an examination of the relationship between the state and federal governments on the one hand, and this private defendant on the other, as it pertains to the specific action complained of by the plaintiff. In the words of the Supreme Court, in declining to find state action in the activities of a public utility heavily regulated by the state and required by statute to provide service to consumers,

> The inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.

*Jackson v. Metropolitan Edison Company*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974), *citing Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 176, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). The same analysis is required when the governmental regulation in issue is federal rather than state, *Northrip v. Federal Nat. Mtg. Assn.*, 527 F.2d 23, 30–32 (6th Cir. 1975).

■ In pursuing this inquiry, the Court must first examine the effect of the regulations in question upon the challenged activity. The Court of Appeals for the Sixth Circuit, in interpreting the pronouncements of the Supreme Court in *Moose Lodge, su-* pra, observed in *Watson v. Kenlick Coal Company, Inc.*, 498 F.2d 1183, 1192 (6th Cir. 1974), that

> [c]ertain regulations [examined in *Moose Lodge, supra*], however, were found to constitute state action *because they required the club to adhere to discriminatory provisions in its constitution and by-laws.* The distinction that emerges from the case is that where regulations give impetus to private conduct so as to foster or encourage it, state action will arise. [emphasis added]

In order to attribute acts of a private party to the government itself, therefore, the government must exercise its power in aid of the private conduct, *Barrera v. Security Building and Investment Corporation*, 519 F.2d 1166, 1170 (5th Cir. 1975); *see United States v. White*, 543 F.2d 1139, 1141 (5th Cir. 1976). It must provide the means whereby a private party commits an act "generally associated with a power exercised by the sovereign," *Northrip v. Federal Nat. Mtg. Ass'n., supra* at 33.

■ In the instant action, it is apparent that the applicable federal regulations in no way encourage the conduct in which defendant Manor Care is alleged to be engaged. Rather, an examination of the statutory and regulatory framework of the Medicaid Program discloses that the Secretary, on the federal level, and the ODPW, on behalf of the State of Ohio, are charged with the responsibility of enforcing the Medicaid regulations, including the regulations upon which the plaintiff bases her claim, and that either or both of these parties may take disciplinary action against a non-complying provider of Medicaid services. It cannot be said that the plaintiff's proposed transfer or discharge by defendant Manor Care, therefore, is either "foster[ed] or encourage[d]" by the applicable regulations, *Moose Lodge, supra* 407 U.S. at 176–77, 92 S.Ct. 1965; *Kenlick Coal Company, supra*, 492 F.2d at 1192. The nexus between the challenged activity and the applicable regulations is therefore lacking in the instant action, *Jackson, supra* 419 U.S. at 351, 354–55, 95 S.Ct. 449.

■ Nor has the plaintiff established that Manor Care's voluntary participation in the Medicaid Program is sufficiently "'affected with the public interest'," *Jackson, supra* at 353, 95 S.Ct. 449, or that it constitutes a "symbiotic relationship" within the meaning of *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *see Jackson, supra* 419 U.S. at 357–58, 95 S.Ct. 449, so as to attribute its conduct to the state or to the federal government.

The nursing services provided by defendant Manor Care do not entail

the exercise by a private entity of powers traditionally exclusively reserved to the State. See, *e. g., Nixon v. Condon,* 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1932) (election); *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (election); *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (company town); *Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966) (municipal park).

*Jackson, supra* at 352, 95 S.Ct. at 454. As the Supreme Court noted in *Jackson, supra* at 353–54 and note 9, 95 S.Ct. at 455,

Doctors, optometrists, lawyers, Metropolitan, and Nebbia's upstate New York grocery selling a quart of milk are all in regulated businesses, providing arguably essential goods and services, "affected with a public interest." We do not believe that such a status converts their every action, absent more, into that of the State.[9]

\* \* \* \* \* \*

The argument has been impliedly rejected by this Court on a number of occasions. See, *e. g., Civil Rights Cases,* 109 U.S. 3, 8, 3 S.Ct. 18, 20, 27 L.Ed. 835 (1883). It is difficult to imagine a regulated activity more essential or more "clothed with the public interest" than the maintenance of schools, yet we stated in *Evans v. Newton,* 382 U.S. 296, 300, 86 S.Ct. 486, 489, 15 L.Ed.2d 373 (1966):

"The range of government activities is broad and varied, and the fact that government has engaged in a particular activity does not necessarily mean that an individual entrepreneur or manager of the same kind of undertaking suffers the same constitutional inhibitions. While a State may not segregate public schools so as to exclude one or more religious groups, those sects may maintain their own parochial educational systems."

A series of decisions by the Court of Appeals for the Sixth Circuit has established that even the public ownership and operation of a hospital, *Place v. Shepherd,* 446 F.2d 1239 (6th Cir. 1971), or a hospital's receipt of federal funds and its regulation by the state, *Jackson v. Norton-Children's Hospitals, Inc.,* 487 F.2d 502 (6th Cir. 1973) (*per curiam*), without the actual involvement of public officials in the challenged conduct, see *O'Neill v. Grayson County War Mem. Hospital,* 472 F.2d 1140 (6th Cir. 1973); *Chiaffitelli v. Dettmer Hospital, Inc.,* 437 F.2d 429 (6th Cir. 1971); *Meredith v. Allen County War Mem. Hospital Comm.,* 397 F.2d 33 (6th Cir. 1968), does not constitute state action. Defendant Manor Care provides nursing services to qualified Medicaid recipients pursuant to a contract with the State of Ohio which may be cancelled at any time by either party upon thirty days' notice, as provided by § 106.2 of the Ohio Medicaid Handbook (plaintiff's Exhibit No. 1), pursuant to federal regulations, 45 C.F.R. § 249.82(c)(1)(vi). It is not a lessee of public property, as in *Burton v. Wilmington Parking Authority, supra,* much less a publicly owned and operated medical institution, as in *Place v. Shepherd, supra,* wherein the Sixth Circuit declined to find state action. It is a privately owned corporation, similar to the public utility in *Jackson, supra,* or the parochial school system in *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *see Evans v. Newton, supra, quoted in Jackson, supra* 419 U.S. at 354 n. 9, 95 S.Ct. 449, whose conduct, therefore, "however discriminatory," *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), is not within the purview of 42 U.S.C. § 1983 or the Fourteenth Amendment.

Alternatively, the plaintiff asserts that a private right of action is impliedly created by the Medicaid regulations upon which she relies, as heretofore set forth.

■ ·The criteria which must be applied by the Court in examining the plaintiff's contention were delineated by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975):

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? [citations deleted]

The application of these criteria to an analysis of the statutory and regulatory framework of the Medicaid Program compels the conclusion that no private remedy may be implied under the Medicaid Act, 42 U.S.C. § 1396 *et seq.*, or the regulations promulgated by the Secretary thereunder pursuant to 42 U.S.C. § 1302.

■ First, while an examination of the Medicaid Program and, in particular, the regulations found at 20 C.F.R. § 405.-1121(k)(4) and 45 C.F.R. § 249.-12(a)(1)(ii)(B)(4) suggests that the plaintiff, a Medicaid recipient, is among the class of persons for whose benefit this legislation was enacted and the regulations promulgated, any right she may assert under this legislation, *see, e..g., Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Smith v. Vowell*, 379 F.Supp. 139 (W.D.Tex.), *aff'd mem.*, 504 F.2d 759 (5th Cir. 1974), must be exercised in conformity with the legislative scheme of the program. A review of the Medicaid regulations discloses that the plaintiff does not possess an absolute right not to be transferred from Manor Care of Willoughby. In the event that a provider's agreement of participation is administratively terminated or is voluntarily cancelled by the provider itself, the state agency responsible for administering the state's plan must satisfy the Secretary that it has "made reasonable efforts to facilitate the orderly transfer" to another facility of Medicaid patients admitted prior to the date of termination, in order that federal funds may continue to be made available to such provider for Medicaid services rendered to these individuals for a period not to exceed thirty days, 45 C.F.R. § 249.10(a)(i)(C) and (a)(15)(v).

Secondly, the Medicaid Act and the regulations contemplate administrative rather than judicial enforcement of the legislation's requirements. Participating providers' compliance with the requirements of the statute and regulations is monitored on both the federal and state levels. The state is mandated pursuant to 45 C.F.R. § 249.-33(a)(10) to withhold payment from non-complying facilities under Title XIX. A non-complying provider may be suspended or terminated from participation in the Ohio Medicaid Plan, or its participation agreement may be converted from an open-ended to a limited term agreement, depending upon the circumstances involved, Ohio Medicaid Handbook § 106.2–.21. The Secretary may also independently determine the provider's compliance with the federal regulations, C.F.R. §§ 249.10(b)(15) and 249.33; *see Hathaway v. Mathews*, 546 F.2d 227, 229 (7th Cir. 1976); *Case v. Weinberger*, 523 F.2d 602, 604–05 (2d Cir. 1975), for the purpose of continuing federal funds for that provider's participation in the program.

The primary responsibility of implementing the Medicaid Program, of determining recipient eligibility for participation, and of ensuring that "care and services will be provided in a manner consistent with simplicity of administration and the best interests of the recipients" is placed upon each participating state, 42 U.S.C. § 1396a(a)(17), (19).

Consistent with the state orientation of Title XIX, Congress did not provide for federal judicial review of administrative determinations of eligibility or compliance under the Medicaid Program, while, in contrast, did explicitly provide for such review following final administrative action with respect to the federally directed Medicare Program under Title XVIII of the Social Security Act, *see* 42 U.S.C. § 1395ff(c), and Old Age, Survivors, and Disability Insurance Benefits Program under Title II thereof, *see* 42 U.S.C. § 405(g). This omission of private federal judicial remedies under Title XIX is indicative of a Congressional intent that such not be implied.

The third criterion of *Cort v. Ash, supra,* requires that the judicial implication of a private remedy be consistent with the underlying purposes of the legislative scheme. Upon review of the Act and collateral regulations, it is apparent that the creation of a private remedy would disrupt the implementation of the Medicaid Program. A private right of action, utilized to enforce specific, limited portions of federal regulations on an *ad hoc* basis would circumvent the responsibility of the state to administer its plan in an organized manner "consistent with simplicity of administration and the best interests of the recipients," 42 U.S.C. § 1396a(a)(19), transferring the primary obligation in such cases from the administrative personnel intended to bear it to the federal courts. *See M. B. Guran Co., Inc. v. City of Akron,* 546 F.2d 201 (6th Cir. 1976); *Wolf v. Trans World Airlines, Inc.,* 544 F.2d 134 (3d Cir. 1976); *Polansky v. Trans World Airlines, Inc.,* 523 F.2d 332 (3d Cir. 1975); *Parsell v. Shell Oil Co.,* 421 F.Supp. 1275 (D.Conn.1976).

Fourth, *Cort v. Ash, supra,* directs the Court's attention to available state remedies. The plaintiff states a claim, as third party beneficiary to the provider agreement currently in effect between defendant Manor Care and the ODPW (plaintiff's Exhibit No. 13), as the fifth cause of action in her Amended Complaint. *Cort v. Ash, supra,* teaches that this criterion is to be read in conjunction with the underlying purposes of the legislation in question, *cf. J. I. Case Co.*

*v. Borak,* 377 U.S. 426, 434–35, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Here, the creation of a federal right of action will disserve the administrative nature of the Medicaid Program, whereas committing the plaintiff to her state remedies is consistent with the primary state implementation of the program. *Cort v. Ash, supra* 422 U.S. at 84–85, 95 S.Ct. 2080.

Upon consideration of these four factors, therefore, the Court concludes that no private action should be judicially created herein.

The plaintiff has invoked the pendent jurisdiction of the Court, however, with respect to her claim as third party beneficiary to the provider agreement in effect between defendant Manor Care and the ODPW. The Ohio Medicaid Handbook, a "[m]anual of policy and procedure governing the Medicaid Program applicable to providers of nursing home care," *see* § 301 thereof, prepared by the ODPW, incorporates the requirements of the federal regulations found at 20 C.F.R. § 405.1121(k)(4) and 45 C.F.R. § 249.12(a)(1)(ii)(B)(4), upon which the plaintiff relies, as among the patients' rights in long term care facilities:

> [Each Medicaid patient] is transferred or discharged only for medical reasons, or for his/her welfare or that of other patients, or for non-payment for his stay (except as prohibited by the Title XIX Program); and given reasonable sure orderly transfer or discharge [sic]. Ohio Medicaid Handbook § 306.4.

 It is apparent from the language of this regulation that it is intended to inure to the benefit of Medicaid patients receiving services in long term case facilities participating in Title XIX through the Ohio State Plan. Ohio law has long recognized that "a third person for whose benefit a promise has been made by another may maintain an action thereon at law in his own name," 11 O.Jur.2d, Contracts § 176, at 425; *see* cases cited *id.* at n. 1. The State of Ohio, having elected to participate under Title XIX and to receive federal funds, is obligated to provide Medicaid services to

qualified recipients in a manner consistent with federal law, *Roe v. Ferguson*, 515 F.2d 279 (6th Cir. 1975); *Stanton v. Bond*, 504 F.2d 1246 (7th Cir. 1974), *cert. denied*, 420 U.S. 984, 95 S.Ct. 1415, 43 L.Ed.2d 666 (1975); *Smith v. Vowell, supra*. Defendant Manor Care's obligations under the state and federal law and regulations are contractual. Insofar as the provisions of the federal regulations found at 20 C.F.R. § 405.1121(k)(4) and 45 C.F.R. § 249.-12(a)(1)(ii)(B)(4) and of § 306.4 of the Ohio Medicaid Handbook reflect a duty owed to Ohio Medicaid patients by the state and by the participating providers of their care, enforceable by them within the administrative structure of the program, therefore, such recipients may maintain an action under a provider's agreement in accordance with the law of Ohio. *See Visintine & Co. v. New York, Chicago and St. Louis R. Co.*, 79 O.L.Abs. 353, 155 N.E.2d 682 (Ct.App. Franklin Co. 1958), *aff'd*, 169 Ohio State 505, 160 N.E.2d 311 (1959).

The exercise of pendent jurisdiction is discretionary with the Court, *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and is to be entertained when, *inter alia*, the situation is such that "the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong," *id.* at 727, 86 S.Ct. at 1139. Such is the case here. Although defendant Manor Care is, strictly speaking, a "pendent party" to these proceedings, inasmuch as no federal claim is maintainable against it, *see Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the federal claims asserted against defendant Kwegyer Aggrey as the official responsible for the implementation of the Ohio Medicaid Plan necessarily impact upon defendant Manor Care, which as a qualified provider of skilled nursing care Medicaid services is obligated to adhere to complementary state and federal regulations, as hereinbefore set forth, despite the fact that its involvement with the State of Ohio and the federal government does not rise to the level of state action. A determination of the plaintiff's rights under state law, therefore, would of necessity involve questions of federal law. The circumstances of this action are distinguishable from those recently confronted by the Supreme Court in *Aldinger v. Howard, supra*, wherein the plaintiff sought to circumvent the immunity of municipal corporations to suit under 42 U.S.C. § 1983. Here, were the actions of defendant Manor Care found to occur under color of state law, this defendant would be subject to suit under § 1983, within the jurisdiction conferred upon this Court by 28 U.S.C. § 1343(3). The County of Spokane, Washington, however, a putative defendant in *Aldinger v. Howard, supra*, could never be subjected to liability under § 1983, despite a showing that it acted under color of state law, inasmuch as the Supreme Court has concluded that Congress intended that such municipal corporations not be "persons" subject to liability thereunder, *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Congress has not altogether excluded private defendants such as Manor Care from the jurisdiction of this Court under 28 U.S.C. § 1343, and the pendent state claim against defendant Manor Care can therefore be entertained consistent with the requirements of Article III of the Constitution of the United States. *Aldinger v. Howard, supra; United Mine Workers v. Gibbs, supra*.

Finally, the plaintiff seeks to maintain this action as a class action pursuant to Rule 23(b)(2), Fed.R.Civ.P., requesting certification of a class composed of all Medicaid patients resident at Manor Care of Willoughby and all such persons who have been discharged therefrom because they were Medicaid recipients.

Rule 23, Fed.R.Civ.P., provides in pertinent part as follows:

(a) Prerequisites to a Class Action.' One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of

law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Action Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . .

■ The burden is upon the plaintiff to establish her right to utilize the class action device. *Senter v. General Motors Corp.*, 532 F.2d 511, 522 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *see Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir. 1974); *Cook County College Teachers, Local 1600, AFT v. Byrd*, 456 F.2d 882, 885 (7th Cir.), *cert. denied*, 409 U.S. 848, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972), *rehearing denied*, 414 U.S. 883, 94 S.Ct. 29, 38 L.Ed.2d 131 (1973); 3B Moore's Fed. Prac. ¶ 23.02–2, at 23–156. She must satisfy all four criteria of Rule 23(a), *supra*, and in addition demonstrate that her purported class satisfies the requirements of the subsection of the rule invoked by her in the Amended Complaint. *Senter v. General Motors Corp., supra* at 522; 3B Moore's Fed.Prac. ¶ 23.03, at 23–228.

An examination of the pleadings and exhibits herein, and the application of the relevant case authority, discloses that the plaintiff has failed to satisfy the requirements of Rule 23, Fed.R.Civ.P.

■ First, it cannot be said that the purported class "is so numerous that joinder of all members is impracticable," Rule 23(a)(1), Fed.R.Civ.P. The resolution of this issue does not turn on the specific number of potential class members involved, but, rather, upon the circumstances surrounding the case, *Senter v. General Motors*

*Corp., supra* at 523 n. 24, *citing Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970).

■ The purpose of the class action device was explained by the Supreme Court in *Hansberry v. Lee*, 311 U.S. 32, 41–42, 61 S.Ct. 115, 118, 85 L.Ed. 22 (1940):

The class suit was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of procedure is impracticable. Courts are not infrequently called upon to proceed with causes in which the number of those interested in the litigation is so great as to make difficult or impossible the joinder of all because some are not within the jurisdiction or because their whereabouts is unknown or where if all were made parties to the suit its continued abatement by the death of some would prevent or unduly delay a decree. In such cases where the interests of those not joined are of the same class as the interests of those who are, and where it is considered that the latter fairly represent the former in the prosecution of the litigation of the issues in which all have a common interest, the court will proceed to a decree.

The geographical concentration of the proposed members of the class is, therefore, a consideration in determining if joinder is a practical alternative to certification of a class, *Demarco v. Edens*, 390 F.2d 836 (2d Cir. 1968); *Giordano v. Radio Corporation of America*, 183 F.2d 558 (3d Cir. 1950). Here, the purported class is limited to a small group of specific individuals, *see Atwood v. National Bank of Lima*, 115 F.2d 861 (6th Cir. 1940), the great majority of whom reside at one location, Manor Care of Willoughby. The plaintiff has made no showing that their joinder in this action is impracticable under these circumstances, *Valentino v. Howlett*, 528 F.2d 975 (7th Cir. 1976); *Demarco v. Edens, supra; Campbell v. A. C. Petersen Farms, Inc.*, 69 F.R.D. 457 (D.Conn.1975); *Ohio v. Richter Concrete Corp.*, 69 F.R.D. 604 (S.D.Ohio 1975). Ac-

cordingly, the requirement of Rule 23(a)(1), Fed.R.Civ.P., has not been satisfied, *Cash v. Swifton Land Corp., supra.*

██ The plaintiff's Motion to certify this class must fail for a more fundamental reason, however. Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This aspect of Rule 23 was addressed by the court in a recent action brought by public assistance recipients against state and local officials responsible for the administration of public aid, *Metcalf v. Edelman*, 64 F.R.D. 407, 409 (N.D.Ill.1974):

> A class must be capable of concise and exact definition. *See, e. g., Eisman v. Pan American World Airlines*, 336 F.Supp. 543, 547 (E.D.Pa.1971); *Williams v. Page*, 60 F.R.D. 29, 34–35 (N.D.Ill. 1973). Each definition proffered by plaintiffs calls for a conclusion, *e. g.*, who were the recipients who could not obtain housing compatible with health and well-being, who should have had shelter exceptions, etc. Before an adequate determination can be made of who is a class member, this court would be required to make an adjudication that a particular class member was denied a livelihood consistent with health and well-being because such plaintiff was not granted a shelter exception.

Similarly, in the instant action, the plaintiff has defined her purported class as those Medicaid patients at Manor Care of Willoughby "who are or will be discharged from said facility solely by virtue of their status as Medicaid recipients." This definition, as those proffered in *Metcalf v. Edelman, supra*, calls for a conclusion, requiring the Court to determine with respect to each potential class member that he or she was not discharged, or will not be discharged, for medical reasons, for his or her welfare or that of other patients, or for nonpayment for his or her stay, 20 C.F.R. § 1121(k)(4) and 45 C.F.R. § 249.12(a)(1)(ii)(B)(4).

The medical condition of each patient at Manor Care of Willoughby differs, of necessity, from that of every other patient, a conclusion supported by an examination of the medical records of each of the 32 Medicaid residents at the nursing home submitted to the Court by defendant Manor Care. The level of care required and the rehabilitative potential of each patient is personalized and is subject to revision according to changes in the state of the patient's health. There is, therefore, no common element of fact other than that each of these individuals is a Medicaid recipient, a matter not in issue. Nor is there a common question of law, inasmuch as the basis for transfer or discharge of a patient is dependent upon the state of his or her health and the currency of payment for his or her care, so that a separate adjudication of each patient's claim under these regulations would be required, as in *Metcalf v. Edelman, supra.*

██ The plaintiff's inability to satisfy the commonality requirement of subsection (a)(2) is essentially a function of the very regulations upon which she bases her claim. The regulations, by delineating specific grounds for the permissible transfer or discharge of a Medicaid patient from a participating care facility, are intended to encourage individualized treatment of recipients such as the plaintiff. The Court of Appeals for the Second Circuit, confronting a similar situation in *Dale v. Hahn*, 440 F.2d 633 (2d Cir. 1971), affirmed the district court's denial of the plaintiff's Motion to certify the action as a class action with the following comment:

> Because of the possible variance in factual situations . . . it would be much more appropriate to handle difficult constitutional questions arising from the application of the statute to varying fact-patterns on a case-by-case basis rather than in a class action. *Id.* at 640.

*Accord, Burchette v. Dumpson*, 387 F.Supp. 812, 820 (E.D.N.Y.1974); *see LoCicero v. Day*, 518 F.2d 783 (6th Cir. 1975); *Stokes v. United States, Immigration and Nat. Serv.*, 393 F.Supp. 24, 32–33 (S.D.N.Y.1975). For the same reason, any action or inaction by the defendants toward the plaintiff cannot be said to be based upon grounds having general application to the purported class, *Dale v. Hahn, supra; Burchette v. Dump-*

*son, supra; see* 3B Moore's Fed.Prac. ¶ 23.-40, at 23–651 and 1975 Supp. at 82. Thus appropriate final injunctive and declaratory relief could not be granted with respect to the class as a whole, Rule 23(b)(2), Fed.R. Civ.P.

The plaintiff's failure to satisfy the mandatory requirements of Rule 23(a)(1) and (2), Fed.R.Civ.P., and her inability to satisfy those of subsection (b)(2) thereof, upon which she bases her demand for class-wide relief, preclude the certification of this action as a class action. *Valentino v. Howlett, supra; Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668 (9th Cir. 1975).

Accordingly, the plaintiff's Motion to certify this action as a class action pursuant to Rule 23(a) and (b)(2), Fed.R.Civ.P., is hereby denied. The Motion of defendant Manor Care to dismiss the Amended Complaint against it is granted as to the plaintiff's first, second, third and fourth causes of action and is denied with respect to the plaintiff's fifth cause of action.

IT IS SO ORDERED.