IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 30, 2001 Session

# DARRELL R. SMITH v. CHATTANOOGA MEDICAL INVESTORS, INC., a/k/a and d/b/a LIFE CARE CENTER OF CHATTANOOGA

**Direct Appeal from the Chancery Court for Hamilton County**
**No. C7219    Hon. W. Frank Brown, III, Chancellor**

**FILED JUNE 27, 2001**

**No. E2000-01352-COA-R3-CV**

Plaintiff's action for breach of contract for nursing home services was dismissed by the Trial Judge on Summary Judgment.  On appeal, we hold plaintiff was third party beneficiary on contracts between the State of Tennessee and defendant.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Lynne Dechman and T. Ann Swafford, Chattanooga, Tennessee, for Appellant, Darrell R. Smith.

Richard J. McAfee and Russell W. Gray, Chattanooga, Tennessee, for Appellee, Chattanooga Medical Investors, Inc.

**OPINION**

Plaintiff's action, based on breach of contract and negligence for damages was dismissed by the Trial Judge, who granted defendant summary judgment.

The Plaintiff is a paraplegic due to injuries sustained in a mugging, and was admitted to Life Care Center of Chattanooga on April, 28, 1998.  The Defendant, Chattanooga Medical

Investors, Inc., is a Tennessee Corporation a/k/a and d/b/a/ Life Care Center of Chattanooga. At the time of plaintiff's admission to defendant's nursing home, he had severe bed sores which needed medical attention. He was admitted as a Medicare patient, but Medicare's payments for plaintiff's expenses were limited to one hundred days.

In July of 1998, when plaintiff's Medicare coverage was about to expire, defendant prepared a Pre-Admission Evaluation (PAE) for plaintiff. The PAE was prepared so that plaintiff could begin receiving Medicaid coverage for his care and treatment at the nursing home.

On July 18, 1998, defendant sent plaintiff to Columbia Parkridge Medical Center's emergency room because he had a temperature of 105.5 degrees and a decubitus ulcer that had become septic. On July 27, 1998 the Bureau of TennCare informed defendant that it was denying the PEA application for plaintiff. Plaintiff was ready for discharge from Parkridge Hospital on July 30, 1998, but defendant refused to readmit him to its facility on the grounds that he was a dangerous patient.

In this action plaintiff alleged that defendant breached a contract to which he was a third-party beneficiary, acted negligently toward him, and converted his Social Security benefits, and further that defendant violated 42 U.S.C. § 1396(r)(c)(5)(A)(i)-(iii).

The standards governing our review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *Byrd v. Hall*, 847 S.W.2d 208, 210-211 (Tenn. 1993). Courts should grant summary judgments only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *Id.*

The contract at issue in this dispute is between the State of Tennessee Department of Health and Life Care Center of Chattanooga. Plaintiff seeks damages for breach of this contract by Life Care, based upon Life Care's decision not to readmit him to its facility upon his release from the hospital. The Trial Court concluded the Plaintiff was not a third party beneficiary to the contract, and explained that because the contract was between Life Care and a governmental entity, a special standard applies:

> Every contract into which a governmental entity enters is made for the benefit of all its citizens. Only when such a contract manifests a specific intent to grant individual citizens enforceable rights thereunder may a citizen claim such rights as a third-party beneficiary . . . . The court has reviewed the contract and found no provision that

manifests a specific intent to grant individual citizens, such as Mr. Smith, with enforceable rights.

Plaintiff contends that the Contract was intended by the parties to benefit Medicaid and Medicaid-eligible patients, and because he is Medicaid-eligible, he has enforceable rights under that contract. Defendant counters that the intent of the Medicaid contracts is to "manage or control healthcare provider's use of public funds, not to guarantee that individual patients or residents of a nursing home receive certain treatment in accordance with state and federal laws." Defendant also argues that even if the plaintiff had an enforceable right as a third party beneficiary, he presented no evidence of a breach of contract.

Medicaid is a joint federal and state program providing medical assistance benefits to qualified recipients[1] under Title XIX of the Social Security Act, codified at 42 U.S.C. §§ 1396-1396(i). The federal government approves a state's plan for the funding of medical services, and then subsidizes a significant portion of the financial obligations the state has agreed to assume. Once a state chooses to participate in Medicaid, the state must comply with the statute's requirements regarding recipient eligibility, the scope of care and services provided, and provider certification, among other things. See *Alexander v. Choate*, 469 U.S. 287, 289 n. 1, 105 S.Ct 712, 714 n. 1 (1985).

The Tennessee Department of Health and Environment is responsible for administering Tennessee's Medicaid program, pursuant to T.C.A § 71-5-101 *et. seq*. The State of Tennessee, having elected to participate under Title XIX and to receive federal funds, is obligated to provide Medicaid services to qualified recipients in a manner consistent with federal law. A state's plan for medical assistance must provide for making available to qualified recipients nursing facility services (other than services for an institution for mental diseases). 42 U.S.C. § 1396a(a)(10); 42 U.S.C. § 1396d(a)(4)(A). To this end, the state contracts with various nursing facilities, including defendant, to provide this medical assistance to persons qualifying under Title XIX.

The contracts entered between the State of Tennessee and defendant, titled "Medical Assistance Participation Agreements," reflect this duty to provide nursing home services to qualified patients. Defendant is a party to two such agreements: one for Level I nursing services, and one for Level II skilled nursing services. The crux of the agreement regarding Level II nursing services is that the nursing facility agrees "[t]o provide room and board, and medical care in the form of Level II services to Title XIX patients" in exchange for the State's agreement "[t]o pay for such level II services . . . for all persons . . . who have been determined by the Department to be eligible for such assistance under the Title XIX program." The remaining sections of the agreement involve administrative requirements incident to the provision of care to Title XIX patients. The Level I agreement likewise concerns the care and treatment of Title XIX patients in exchange for

---

[1]"Qualified recipients" include, but are not limited to, persons over the age of 65 or disabled persons over the age of 18, whose income and resources do not exceed the level established by the States with reference to the poverty level.

reimbursement by the State, and all the administrative requirements incident thereto.

These Agreements make it obligatory upon the parties to comply with all federal and state Medicaid laws and regulations. Plaintiff alleges that defendant breached the contract by violating 42 U.S.C. 1396r(c)(2)(D) and Rule 1200-13-1-.08(18)(f) as promulgated by the Tennessee Department of Health and Environment, Division of Medicaid, when it refused to readmit Plaintiff to its facility upon his discharge from the hospital.

Federal law provides, in pertinent part:

(i) Notice of Transfer. -- Before a resident of a nursing facility is transferred for hospitalization or therapeutic leave, a nursing facility must provide written information to the resident and an immediate family member or legal representative concerning

(I) the provisions of the State plan under this title regarding the period (if any) during which the resident will be permitted under the State plan to return and resume residence in the facility, and

(II) the policies of the facility regarding such a period, which policies must be consistent with clause (iii).

\* \* \* \* \*

(iii) Permitting resident to return. -- A nursing facility must establish and follow a written policy under which a resident –

(I) who is eligible for medical assistance for nursing facility services under a State plan,

(II) who is transferred from the facility for hospitalization or therapeutic leave, and

(III) whose hospitalization or therapeutic leave exceeds a period paid for under the State plan for the holding of a bed in the facility for the resident, will be permitted to be readmitted to the facility immediately upon the first availability of a bed in a semi-private room in the facility if, at the time of readmission, the resident requires the services provided by the facility.

42 U.S.C. 1396r(c)(2)(D). The Tennessee Department of Health and Environment has promulgated the following rule concerning readmission into a nursing facility:

If a Medicaid-eligible recipient's hospitalization or therapeutic leave exceeds the

period paid for under the Tennessee Medicaid program for the holding of a bed in the facility for the resident and if the resident continues to require the services provided by the Long-term Care Facility, then the resident must be readmitted to the facility immediately upon the first availability of a bed in the facility, consistent with paragraph (5)(b)[2].

Rule 1200-13-1-.08(5)(f).   The Rules define "Medicaid-eligible" as:

an individual who has been determined by the Tennessee Department of Human Services or the Social Security Administration to be financially eligible to have TennCare make reimbursement for covered services.

1200-13-1-.10(1)(f).  An individual is "medically entitled" when that person has a Pre-Admission Evaluation that has been certified by a physician and that has been approved by the Department. 1200-13-1-.10(1)(g).

Plaintiff was discharged from defendant's nursing home to the hospital because of his need for urgent medical care.  While he was not then receiving Medicaid benefits, he was "medicaid-eligible" as defined by the Tennessee Department of Health and Education.  In fact, the PAE submitted by defendant notes that plaintiff is "Medicaid Eligible now: previously was private-pay or other 3rd party payor."  Plaintiff had previously received Medicaid benefits for prior stays at other nursing homes and only stopped receiving Medicaid when he became eligible for limited Medicare coverage.  Because he was medicaid-eligible, his readmission into the nursing home should have been governed by the above rules and federal law.

Defendant argues that because plaintiff's PAE for his stay at the nursing home had been denied, it had no duty to readmit him.  However, Defendant confuses "Medicaid eligible" with "medically entitled."  When plaintiff was admitted to the nursing home, he did not have an approved PAE in place for nursing home care because his prior PAE that was in place during his stay at the Hamilton County Nursing Home had expired.[3]  However, at the time plaintiff entered Life Care, he was eligible for, and began receiving Medicare, which took priority over other healthcare coverage. Plaintiff's PAE was denied by the Tennessee Department of Health, Bureau of TennCare on July 27, 1998.  The denial letter states that it "affects only your right to Medicaid paying for your nursing

_____

[2](5)(d) provides that deviation from the order of the wait list for admission to a facility may be based upon the applicant's sex, if the available bed is in a room or a part of the facility that exclusively serves residents of the opposite sex.

[3]A PreAdmission Evaluation, or PAE, is a process of assessment used to document an individual's medical condition and eligibility for Medicaid-reimbursed care in a Nursing Facility. A PAE is required when a Medicaid Eligible is admitted to a Nursing Facility and when a private-paying resident of a Nursing Facility attains Medicaid Eligible status, among other circumstances. An approved PAE is valid for 90 days beginning with the approval date.

home care. This decision does not affect your right to other services under the Medicaid program so long as you are eligible for Medicaid." The denial indicated that plaintiff had met all the criteria to qualify for Medicaid reimbursement for Level 2 care, but the PAE was denied for failure to meet certain technical requirements. Specifically, it stated that the PAE contained "PASARR error" and notes that "patient has diagnoses depression. Please correct page 8." At the bottom of the denial, the following is imprinted by means of a stamp:

> Federal law requires that any individual with suspected mental illness or mental retardation be identified and evaluated to determine the need for active treatment before admission to a nursing facility. This review will be initiated once you have passed the above criteria.

All individuals who reside in or seek admission to a Medicaid-certified nursing facility must have a PASARR Level I assessment done for mental illness and mental retardation. If the Level I assessment indicates the need for a PASARR Level II assessment of need for specialized services for mental illness, the individual must undergo the Level II assessment. Rule 1200-13-1-.10(2)(h). A PASARR, or PreAdmission Screening/Annual Resident Review, is used to determine whether an individual who resides in or seeks admission to a Medicaid-certified Nursing Facility has, or is suspected of having, mental illness or mental retardation, and, if so, whether the individual requires specialized services. Despite the fact that plaintiff had been diagnosed with depression, as noted in the treatment records, the PAE that was submitted stated that he did not have diagnosis of a mental illness, did not present evidence of a mental illness, or have a history of mental illness in the last 2 years. The diagnosis of depression should have been noted and a PASARR Level II assessment should have been performed by the appropriate medical personnel.

A nursing facility which has entered into a provider agreement with the state has a duty to assist a resident or applicant in applying for Medicaid eligibility and in applying for Medicaid-reimbursed Nursing Facility care. Rule 1200-13-1-.10(2)(i). This includes assistance in properly completing all the necessary paperwork and in providing the relevant Nursing Facility documentation to support the PAE. Rule 1200-13-1-.10(2)(i)(1). Defendant's failure to properly complete the PAE for plaintiff was the reason that it was denied by the department. Nevertheless, plaintiff remained "Medicaid eligible" as he had met the financial criteria set forth by the State, as noted by Life Care on the PAE. Because the provisions in the United States Code and the Tennessee Rules regarding readmission after a discharge for urgent medical care refer to patients who are "Medicaid eligible" and not just those with a current PAE, those provisions apply to defendant's interaction with plaintiff.

The law presumes that a contract has been executed solely for the benefit of those who are parties to it. Thus, the general rule is that an individual who is not a party to a contract cannot sue for its breach. However, the general rule gives way when a non-party can prove that he is an intended beneficiary of the contract. *First Tenn. Bank Nat'l Ass'n v. Thoroughbred Motor Cars, Inc.*, 932 S.W.2d 928, 930 (Tenn. Ct. App. 1996). A non-party who wishes to enforce a contract has the burden of proving that he is entitled to recover as a third- party beneficiary. *Moore*

*Construction Co. v. Clarksville Dept. of Electricity*, 707 S.W.2d 1, 9 (Tenn. Ct. App. 1985).

The law draws a sharp distinction between an intentional beneficiary (who may maintain an action on the contract) and an incidental beneficiary (who may not). The fact that a party may reap a substantial benefit from the performance of a contract does not, in and of itself, entitle him to the status of an intentional beneficiary. *United American Bank of Memphis v. Gardner*, 706 S.W.2d 639 (Tenn. Ct. App. 1985). Rather, he must show that the contract was entered into, at least in part, for that party's benefit (the "intent to benefit" test) or that one party to the contract assumed a duty that the other party owed to the third-party (the "duty owed" test). *Moore Construction*, 707 S.W.2d at 9.

When one of the parties to a contract is a governmental entity, the person attempting to establish rights as a third party must show that he or she is specifically intended to have the benefit of the contract and not merely be a ordinary citizen. *Coburn v. City of Dyersburg*, 774 S.W.2d 610, 612 (Tenn. Ct. App. 1989).

> A contract entered into by a governmental entity requires a showing that the contract was intended by the parties to confer a direct obligation to identifiable third-party entities. Every contract into which a governmental entity enters is made for the benefit of all its citizens. Only when such a contract manifests a specific intent to grant individual citizens enforceable rights thereunder may a citizen claim such rights as a third party beneficiary.

*Coburn*, 774 S.W.2d at 612.

In the case before us, the purpose of these contractual arrangements between the federal government and the states, and between the state and defendant, is to furnish medical assistance and rehabilitation services to families with dependent children and to aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services. 42 U.S.C. § 1396. The benefit of this program flows to those persons who qualify for this medical assistance. The contract between the state and defendant is even more specific; it is for the benefit of qualified recipients under Title XIX who receive or would receive nursing care at the facility. Contrary to the finding by the Trial Court, the contract does not merely benefit all citizens, but specifically expresses the intent to benefit eligible medicaid patients. The plaintiff has met the burden established in *Coburn v. City of Dyersburg* regarding when a third-party has rights under a contract with a government entity. This is consistent with cases from other jurisdictions addressing these, or similar issues.

In the case of *Fuzie v. Manor Care, Inc.*, 461 F.Supp. 689 (N.D. Ohio 1977), the Court held that a medicaid recipient could be a third party beneficiary to a contract between a state and a medical service provider with the right to bring a claim for breach of contract. The defendants argue that the decision in *Fuzie v. Manor Care* is not relevant to this case because "the court in that case reached [its] conclusion by relying on federal regulations that were incorporated into an Ohio

Medicaid Handbook [and] neither that handbook, nor the regulations incorporated into that handbook, are at issue in this case." While it may be true that the regulations at issue are different, the reasoning of the Court in *Fuzie* is still applicable to the case at hand. In fact, the regulations in questions are quite similar. In *Fuzie*, the Court found that the specific provision regarding when and how a patient in a long-term facility may be discharged was "intended to inure to the benefit of Medicaid patients receiving services in long term care facilities." Here, the regulation at issue concerns the readmission of a "Medicaid-eligible" patient to a long-term facility after a hospitalization without having dropped back to the bottom of any existing wait list. Again, this is for the specific benefit of that particular class of patients, and not just for administrative purposes as argued by the Defendant.

Like the State of Ohio, the State of Tennessee has elected to participate under Title XIX and to receive federal subsidization of its medical assistance program. It is therefore likewise obligated to provide Medicaid services to qualified recipients in a manner consistent with federal law. Insofar as the provisions of Title XIX, Tennessee's Medical Assistance Act, and the rules promulgated by the Tennessee Department of Health and Education reflect a duty owed to Tennessee Medicaid patients and Medicaid-eligible patients by the state and by the participating providers of their care, such recipients as eligible persons may maintain an action under a provider's agreement in accordance with the laws of this State. Accord: *Holbrook v. Pitt*, 643 F.2d 1261 (7th Cir. 1981).

The Court in *Holbrook* found that the tenants were third-party beneficiaries to the Contracts between HUD and the property owners, and concluded that:

> If the tenants are not the primary beneficiaries of a program designed to provide housing assistance payments to low income families, the legitimacy of the multi-billion dollar Section 8 program is placed in grave doubt.

643 F.2d at 1270-1271.

Likewise, if the patients in nursing homes are not the primary beneficiaries of a program designed to provide medical assistance to low income individuals and families, that program's legitimacy would also be in doubt.

Plaintiff's status as "medicaid-eligible" renders him a third party beneficiary to the contract between the State of Tennessee and Life Care. The issue thus becomes whether there is evidence of a breach of the Contract, which the Trial Court did not reach.

The evidence regarding breach of contract is not disputed. Plaintiff was admitted to Life Care on April 28, 1998, because he qualified for Medicare disability benefits, the first 100 days of his stay at the facility were paid by Medicare. Plaintiff had received Medicaid benefits in the past for nursing home care and remained financially eligible for Medicaid during his stay at defendant's nursing home. On July 18, 1998, plaintiff was transferred to the hospital for urgent medical care because he had a temperature of 105.5. When he was discharged from the hospital, defendant refused to readmit him to its facility. Cathy Janeckzo, the Executive Director at the facility, stated

that the reason for this refusal was because plaintiff posed a threat to the staff and other residents at the facility.

As set forth above, the contract between defendant and the State of Tennessee requires defendant to, among other things, comply with all state and federal rules and regulations. Included are the rules governing the readmission of a patient after his or her transfer to a hospital for urgent medical care. If that patient is Medicaid-eligible, the facility is required to readmit the patient to the first available bed. By refusing to readmit plaintiff after his hospitalization, defendant breached its contract with the State.

Defendant's argument that it validly refused to readmit plaintiff because of his behavioral problems is not sufficient to overcome the statutory and regulatory requirements. While a nursing facility may evict a patient if "the safety of individuals in the facility is endangered," 42 U.S.C. § 1396r(c)(2)(A)(iii), specified procedures must be followed in such cases, including notice to the resident. Despite the problems testified to by the staff at defendant's facility, no one ever notified the long term care ombudsperson regarding any violence or threats of violence, the police were never called, and no one had filed a 30-day notice of eviction on plaintiff. The record establishes that plaintiff was discharged from Life Care in order to receive urgent medical care, and not because of behavioral problems.

As to the issue of damages for the breach, an affidavit from an official at Parkridge Medical Center, states that plaintiff owes Parkridge $103,430.00 for the time between July 31, 1998 and midnight on November 19, 1998. However, defendant claims that this is not money owed by plaintiff, but rather by the state under TennCare, and therefore does not constitute damages. We conclude that any damages owing to the plaintiff as a result of the breach of contract is a disputed issue of material fact.

Plaintiff raised issues as to other possible theories to recover damages, which we pretermit.

We vacate the Judgment of the Trial Court, reinstate the action for breach of contract, and remand for further proceedings consistent with this Opinion.

The cost of the appeal is assessed to defendant, Chattanooga Medical Investors, Inc.

_____
HERSCHEL PICKENS FRANKS, J.