IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 26, 2021 Session

## ELVIS PRESLEY ENTERPRISES, INC., ET AL. v. CITY OF MEMPHIS, ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-18-0972     Jim Kyle, Chancellor**

_____

**No. W2019-00299-COA-R3-CV**

_____

Plaintiffs filed this declaratory judgment action seeking a binding judicial interpretation of a contract executed by the three defendants. Plaintiffs were not parties to the contract, nor did their complaint allege that they were third-party beneficiaries of it. The three defendants filed motions to dismiss for failure to state a claim based on lack of standing, which the trial court granted. The plaintiffs appeal. We affirm and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Clarence A. Wilbon and J. Bennett Fox, Jr., Memphis, Tennessee, for the appellants, Elvis Presley Enterprises, Inc.; Guesthouse at Graceland, LLC; and EPPF, LLC.

Jonathan P. Lakey and John J. Cook, Memphis, Tennessee, for the appellee, City of Memphis.

Bruce D. Brooke, Memphis, Tennessee, for the appellee, Shelby County, Tennessee.

David Wade, Clayton C. Purdom, and Rebecca K. Hinds, Memphis, Tennessee, for the appellee, Memphis Basketball, LLC.

### OPINION

### I.    FACTS & PROCEDURAL HISTORY

Elvis Presley Enterprises, Inc., and its affiliates, Guesthouse at Graceland, LLC, and EPPF, LLC (collectively, "EPE") own and/or operate real property in Memphis, Tennessee, popularly known as Graceland.[1]  Beginning in 2014, EPE began a multi-phased revitalization plan for Graceland, which included building a new hotel and a "retail, exhibition, and museum facility."  EPE developed an economic impact plan requesting approval of tax increment financing and submitted it to the Economic Development Growth Engine Industrial Development Board of the City of Memphis and County of Shelby (commonly known as "EDGE").[2]  EDGE ultimately approved the plan for $124 million in financing.  After the necessary approvals from the City of Memphis, Shelby County, and the State of Tennessee, EPE completed the initial phase of the Graceland project with tax increment financing.

In early 2017, EPE advised the City of Memphis, Shelby County, and EDGE that it would be submitting a supplement to its economic impact plan seeking approval of an increase in its tax increment financing and construction of a theater capable of seating 6,200 persons.  According to EPE, both the City and the County initially expressed support for the supplemental plan.  However, the supplemental plan, and particularly its proposed arena, was soon met with opposition from Memphis Basketball, LLC.

In 2001, the City, the County, and the owner of an NBA franchise, HOOPS, LP, had entered into a contract entitled the "Memphis Arena Use and Operating Agreement."  For purposes of this appeal, we will refer to the 2001 contract as "the Hoops Agreement."  The Hoops Agreement was executed in connection with the relocation of an NBA franchise from Vancouver to Memphis and the construction of the sports arena complex that would become the FedEx Forum.  The Hoops Agreement (by an amendment) contained a non-competition covenant recognizing that "an important element of the success of the Arena Complex is to limit direct competition from a CITY/COUNTY Controlled Facility, if any, in the booking of events that could take place in the Arena Complex."  In addition to specific rules regarding such events, the Hoops Agreement also contained a non-participation provision, which stated:

---

[1] Because this case was resolved on Rule 12 motions to dismiss, the facts are largely taken from the complaint.

[2] As the Tennessee Supreme Court explained in a prior appeal of this case:

> EDGE is a Tennessee nonprofit corporation that, among other things, considers applications for its Tax Increment Financing ("TIF") program to promote industrial development.  If EDGE's Industrial Development Board votes to do so, EDGE recommends applications for TIF to the Shelby County Commission and Memphis City Council for final approval.  Rather than providing direct funding, the TIF program allows developers to share in increased property tax revenues to be received from the surrounding area of the developer's project.

*Elvis Presley Enterprises, Inc. v. City of Memphis*, 620 S.W.3d 318, 320 (Tenn. 2021) (footnote omitted).

>        Non-Participation.  During the Term, neither CITY/COUNTY nor any CITY/COUNTY Affiliate shall, without the prior written consent of HOOPS, design, develop, construct or otherwise fund, provide economic or tax benefits or incentives to, or materially participate in the design, development, construction or financing of (any of the foregoing activities, a "Contribution") any new Competing Facility; provided, however, the foregoing provisions shall not be interpreted to prohibit transactions and activities normally and/or routinely engaged in by the (x) planning, building, permitting and engineering departments of CITY/COUNTY in the ordinary course of reviewing and/or approving projects submitted by private developers, or (y) CITY/COUNTY Industrial Development Corporations and/or other CITY/COUNTY Affiliates, the general purpose of which is to encourage private development, in the ordinary course of establishing tax freeze programs, tax incentive programs, PILOT programs and other similar economic programs aimed at encouraging private development.  In the event HOOPS consents to CITY/COUNTY's Contribution to any such Competing Facility, such Competing Facility will be subject to the non-competition provisions of Section 30(b).  Notwithstanding anything to the contrary contained herein, no provision or term of this Operating Agreement shall be construed or interpreted as prohibiting or restricting CITY/COUNTY from carrying out its lawful purposes, functions and activities, and/or approving any resolution, ordinance, rule and/or regulation in its ordinary course of business, which CITY/COUNTY believes to be in the best interests of CITY/COUNTY and its citizens, provided such actions by CITY/COUNTY are not exercised in a discriminatory manner as applied to the Franchise, the Arena Complex, HOOPS or any HOOPS Affiliate.

Essentially, the Hoops Agreement restricted the City and County from providing tax incentives or other benefits for facilities that would compete with the FedEx Forum.  The Hoops Agreement defined a "competing facility" as follows:

>        "Competing Facility" means any now existing or new indoor or covered sports or entertainment arena, indoor or covered performance facility or other indoor or covered facility that (i) could compete with the Arena Complex for the booking of any event, or (ii) has or will have a seating capacity of more than 5,000 persons and fewer than 50,000 persons; provided, however, the foregoing provisions shall not apply to any hotel ballrooms, movie theaters or convention and hotel facilities that are not designed or constructed to be able to accommodate or be used as venues for concerts, theatrical shows, public assemblies or sporting events. . . . .

Memphis Basketball, LLC, had acquired the NBA franchise team from HOOPS, LP, in 2012, and became its successor-in-interest under the Hoops Agreement.  Thus, Memphis

Basketball expressed concern to the City and the County that public funding of EPE's proposed arena would violate the Non-Participation provision of the Hoops Agreement.

According to EPE, it tried unsuccessfully to negotiate with Memphis Basketball and the City, but the City ultimately would not consent to EPE's supplemental plan and proposed arena unless it received written confirmation from Memphis Basketball that the proposed arena would not breach the Hoops Agreement. At that point, according to EPE, the approval process "came to a halt." EPE filed a lawsuit in chancery court against the City, the County, and Memphis Basketball, seeking a declaratory judgment regarding how the Hoops Agreement should be interpreted. Specifically, EPE sought a declaratory judgment that the Hoops Agreement did not prohibit the City, the County, or EDGE from approving EPE's supplemental plan for tax increment financing of the arena. All three defendants filed motions to dismiss on the basis that EPE was not a party or a third-party beneficiary of the Hoops Agreement, and therefore, EPE lacked standing to seek a declaratory judgment regarding the contract. However, the lawsuit was ultimately dismissed by the chancery court for lack of standing due to a failure to exhaust administrative remedies.

While a post-judgment motion was still pending in the chancery court litigation, EPE returned to EDGE and obtained a resolution conditionally approving the supplemental plan and proposed arena. The EDGE resolution stated, in relevant part:

> NOW, THEREFORE, BE IT RESOLVED, contingent upon either (i) a final, binding, non-appealable ruling in the pending litigation in the Chancery Court for Shelby County Tennessee for the Thirtieth Judicial District at Memphis, No. CH-17-1653 or any subsequently filed litigation (the "Arena Litigation") or (ii) a binding agreement by the parties settling the conflict and approved in advance by the EDGE Board, which binding, non-appealable ruling or settlement agreement has the effect of providing that either (A) the Arena is not a Competing Facility under the Memphis Arena Use and Operating Agreement by and among the City of Memphis and Shelby County, Tennessee and Hoops, LP, as amended ("Contract"), or (B) that the Arena does not violate the Non-Competition covenant in the Contract, or (C) that the actions of EDGE, the City of Memphis and County of Shelby, Tennessee in approving the Arena conform with Section 30(c) of the Contract, as amended in Section (f) of the Second Amendment to Contract, by the Economic Development Growth Engine Industrial Development Board of the City of Memphis and County of Shelby, Tennessee, as follows:
> 1. The Board hereby recommends the approval of the Supplement by the Memphis City Council and the Shelby County Commission.

Thereafter, the Shelby County Commission adopted a resolution conditionally approving

- 4 -

the supplemental plan and proposed arena with nearly identical language. The pending post-judgment motion in the chancery court litigation was subsequently withdrawn, and with no further action taken in that case, the order of dismissal for failure to exhaust administrative remedies became final.

Shortly thereafter, EPE filed this second lawsuit in chancery court, again requesting a declaratory judgment interpreting the Hoops Agreement. The named defendants were again the City, the County, and Memphis Basketball. The complaint alleged that the City and Memphis Basketball were "incorrectly" taking the position that the Non-Participation provision of the Hoops Agreement prohibited the City and County from participating in the development or financing of EPE's proposed arena as a competing facility. Thus, EPE sought a declaratory judgment pursuant to Tennessee Code Annotated section 29-14-103 that either: (a) its proposed arena would not be a competing facility as defined under the Hoops Agreement; (b) its proposed arena would not violate the Non-Participation provision; or (c) approval of its arena would fall within the class of excepted activities under the latter part of the Non-Participation provision. Simply stated, EPE sought a declaratory judgment that the Hoops Agreement did not prohibit EPE from building the proposed arena with tax incentive funds.

Having already faced motions to dismiss based on a lack of standing in the first chancery court lawsuit, EPE's complaint in the second lawsuit included a separate section specifically entitled, "EPE HAS STANDING TO MAINTAIN THIS DECLARATORY JUDGMENT ACTION." In particular, EPE claimed that it had standing because of "the impact" that the Hoops Agreement was having on EPE's legal rights, interests, and privileges. EPE's complaint alleged that "[i]n essence, all that is required in order to establish requisite standing is that the plaintiff must show that he himself is injured by the challenged action of the defendant." (internal quotation omitted). However, EPE's complaint also alleged that the County resolution and the EDGE resolution included "specific mandates requiring EPE to have this Court interpret The [Hoops] Agreement." According to EPE's complaint, "[t]he County Commission (via The County Resolution) instructed and authorized EPE to come into The Chancery Court for Shelby County, Tennessee, and have this Court provide a declaration as to the proper interpretation of the Non-Participation Provision contained in The [Hoops] Agreement." EPE pointed out that the County was a party to the Hoops Agreement and argued that the County's legislative body, the County Commission, had "specifically instructed and ordered EPE to obtain this interpretation before EPE can move forward with the next phase of The Graceland Project," which was "sufficient to confer standing upon EPE." EPE suggested that a party to the contract "has authority to issue this mandate and confer standing upon EPE." EPE attached to its complaint the Hoops Agreement, the Shelby County Charter, its economic impact plan and supplemental plan, the County Commission's resolution, and other documents.

Shelby County was the first defendant to file a Rule 12 motion to dismiss for failure to state a claim based on lack of standing. The County argued that EPE was not a party to

the Hoops Agreement and yet it sought a declaratory judgment interpreting its provisions. The County argued that only the parties to a contract or intended third-party beneficiaries may sue to enforce a contract, and therefore, those are the only parties who have standing to seek a declaratory judgment regarding the contract as well. The County noted that EPE was not a party to the Hoops Agreement and that EPE's complaint contained no allegation that it was a third-party beneficiary. In any event, Shelby County contended that EPE would not meet the test for a third-party beneficiary of a contract with a governmental entity. The County also argued that EPE was incorrect in its assertion that the County Commission had "conferred standing" on EPE.

The City filed a separate motion to dismiss for failure to state a claim due to lack of standing. The City likewise argued that EPE was a stranger to the contract at issue and that it could not seek a declaratory judgment interpreting the contract when the parties to the contract did not seek an interpretation themselves. The City argued that the Declaratory Judgments Act is merely a procedural mechanism for asserting substantive rights, and because EPE was not a party to and did not allege that it was a third-party beneficiary of the contract, it could not seek a declaratory judgment regarding the contract. According to the City, any interest EPE claimed in the Hoops Agreement did not rise to the level of a "legally protected interest" that would provide standing to seek an interpretation of the contract. The City also disputed the notion that the resolutions had somehow "conferred standing" on EPE, noting that none of the language within the resolutions purported to assign any contractual rights to EPE. The City also noted that the Hoops Agreement contained a provision prohibiting assignments without the consent of Memphis Basketball. Alternatively, the City argued that the second chancery court lawsuit was barred by res judicata and collateral estoppel.

Memphis Basketball also filed a motion to dismiss for failure to state a claim due to lack of standing. It essentially raised the same arguments as the City and the County, asserting that EPE was a stranger to the Hoops Agreement with no substantive rights therein, and as a result, it could not seek a binding interpretation of the contract in a declaratory judgment action. Memphis Basketball also argued that the second chancery court lawsuit was barred by res judicata and collateral estoppel.

Six weeks after the last motion to dismiss was filed, rather than filing a response to the motions, EPE filed an "emergency motion" to convert the defendants' motions to dismiss into motions for summary judgment and to continue the proceedings to allow time for discovery. EPE argued that it was "entitled to conduct discovery on the issue of standing prior to adjudication of any dispositive Motion." EPE claimed that the defendants' motions to dismiss had relied on facts and issues beyond the complaint, the Hoops Agreement, and the County resolution, and therefore, the motions must be treated as motions for summary judgment. EPE maintained that the County Commission had "authorized" it to obtain an interpretation of the Hoops Agreement and that EPE was simply "acting under the explicit authorization and mandatory direction of The County" by

commencing this action "in accordance with the express terms of The County Resolution." However, EPE also argued that matters of "intent" necessarily required the court to stray beyond the four corners of the complaint, the Hoops Agreement, and the County resolution. EPE contended that a general "agency relationship" could be found to exist between EPE and the County, even in the absence of any explicit agreement to that effect. EPE claimed that the issue of whether it could act as an agent of the County would be a complex factual issue that would require the court to examine the parties' conduct and relationship. Thus, EPE asked the court to convert the motions to dismiss to motions for summary judgment and to allow it to conduct discovery on the issue of standing.

The County filed a response, asserting that discovery on the issue of standing was unnecessary and that the court should make the decision as a matter of law based on the complaint, the Hoops Agreement, and the County resolution. The County noted EPE had alleged that it was the County Commission's resolution that had authorized EPE to obtain an interpretation of the Hoops Agreement. According to the County, the resolution did nothing of the sort, as it did not instruct or authorize EPE "to do anything." The County maintained that there was nothing in the resolution that would even hint at the creation of a principal-agent relationship.

The City also responded to the motion and contended that the court should make the determination of standing based on the complaint and the documents attached thereto, which included the Hoops Agreement and the County resolution. The City denied that it had asked the court to look beyond those documents. The City also pointed out that EPE's complaint simply alleged that standing had been "conferred" by the resolution and that it did not allege an agency relationship or any elements necessary to establish one. The City suggested that EPE's complaint had mischaracterized the resolutions and that they simply "[did] not say what EPE alleges they say." According to the City, the resolutions did nothing to "confer standing" on EPE to pursue this lawsuit. Thus, the City argued that it was unnecessary to consider matters of "intent" beyond the plain language of the resolution itself or to conduct discovery.

Memphis Basketball likewise argued that the defendants had not relied on any matters outside the complaint and its exhibits and that it was not necessary to convert the motions to summary judgment motions. EPE filed yet another reply, maintaining that the issue of standing required the court to consider proof outside the current record. Specifically, it asserted that the court should consider the minutes of meetings and transcripts from proceedings before the County Commission, a City Council committee, EDGE, and the chancery court during the first case. According to EPE, statements from the individual County Commissioners would establish that "the intent and purpose of The County Resolution was to have EPE go into Court on behalf of itself and The County" to obtain an interpretation of the Hoops Agreement. Thus, EPE argued that the resolution was passed "to give EPE standing" and make EPE the agent of the County.

After a hearing, the trial court entered an order stating that a ruling on EPE's emergency motion was "continued" pending a hearing on the motions to dismiss. In effect, the trial court would proceed to hear the motions to dismiss for failure to state a claim first, but it permitted EPE to file a response to the motions because it had not yet done so.

Thereafter, EPE filed a combined response to the three motions to dismiss. EPE reiterated its position that it had standing based on the "negative impact" the Hoops Agreement was having on EPE's rights and privileges as well as the fact that the County Commission had "conferred" standing on EPE through the resolution. EPE disputed the notion that only parties or third-party beneficiaries may sue to enforce a contract. EPE argued that a distinction should be made in this case because it was not attempting to "enforce" the Hoops Agreement but seeking a declaration in order to protect its own interests. Alternatively, however, EPE argued in its response, for the first time, that it *was* a third-party beneficiary of the Hoops Agreement, citing language used in the latter part of the Non-Participation provision. EPE also argued that it had "explained *ad nauseum*" in its complaint that the County had "authorized" EPE to obtain an interpretation of the Hoops Agreement, and so the trial court was required to accept this allegation as true for purposes of the motions to dismiss. EPE also maintained that discovery was required as to the County's intent. Each of the defendants filed additional replies to EPE's response.

After a hearing, the trial court entered an order of dismissal granting the defendants' motions to dismiss pursuant to Rule 12.02(6) on the basis that the complaint failed to state a claim upon which relief could be granted. "[B]ased upon the pleadings," the trial court found that EPE "lack[ed] standing to bring this matter." The trial court did not reach the alternative issues of res judicata and collateral estoppel.

EPE timely filed a notice of appeal to this Court. On appeal, the defendants maintained that dismissal was appropriate due to lack of standing but alternatively argued that dismissal would have been appropriate on the basis of res judicata. *Elvis Presley Enterprises, Inc. v. City of Memphis*, No. W2019-00299-COA-R3-CV, 2019 WL 7205894, at *3 (Tenn. Ct. App. Dec. 26, 2019), *rev'd and remanded*, 620 S.W.3d 318 (Tenn. 2021). Although one judge dissented, this Court resolved the appeal based on the alternative argument, concluding that the second chancery court action was barred by res judicata. *Id.* at *7. As a result, this Court did not address the issue of standing. *Id.* The Tennessee Supreme Court reversed this Court's decision because although the chancery court in the first action "couched its dismissal . . . based on a lack of standing," it ultimately made clear that it was dismissing the case based on a failure to exhaust administrative remedies, which was not an adjudication on the merits for purposes of res judicata. *Elvis Presley Enterprises, Inc. v. City of Memphis*, 620 S.W.3d 318, 324-25 (Tenn. 2021). The Supreme Court remanded to this Court "for consideration of whether the trial court properly dismissed the [second] complaint based on the doctrine of standing." *Id.* at 319.

## II. ISSUES PRESENTED

After the remand by the Tennessee Supreme Court, this Court permitted the parties to submit supplemental authority if they desired to do so. The parties submitted supplemental briefs and participated in oral argument. The issues presented in EPE's brief, which we have slightly restated, are:

1. Whether the trial court erred in granting the defendants' motions to dismiss for lack of standing to seek a declaratory judgment when EPE satisfied the three necessary elements for standing;

2. Whether the trial court erred in concluding that EPE lacked standing when the County conferred standing upon EPE and authorized it to pursue the declaratory judgment;

3. Whether the trial court erred in denying EPE the opportunity to conduct discovery on the issue of standing prior to dismissing the complaint; and

4. Whether the trial court erred in granting the motion to dismiss without explaining the legal basis for its finding that Plaintiffs lacked standing.

For the following reasons, we affirm the trial court's order of dismissal for failure to state a claim due to lack of standing.

## III. DISCUSSION

### A. Sufficiency of the Trial Court's Order

We will consider EPE's last issue first because it challenges the sufficiency of the findings in the trial court's order of dismissal. EPE contends that the trial court should have provided a detailed "explanation" of its ruling that EPE lacked standing. However, "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule[] 12[.]" Tenn. R. Civ. P. 52.01; *see also In re Paisley H.*, No. E2020-00174-COA-R3-JV, 2020 WL 5496679, at *5 (Tenn. Ct. App. Sept. 10, 2020) ("[F]indings of fact and conclusions of law are not required in resolving motions to dismiss under Rule 12 of the Tennessee Rules of Procedure[.]"). We note that even though Rule 52.01 "exempts a trial court from having to state its findings of fact and conclusions of law on decisions of Rule 12 motions, 'it is most often a good idea for the court to include its findings in its order regardless of whether the lack thereof constitutes error.'" *City of Morristown v. Ball*, No. E2020-01567-COA-R3-CV, 2021 WL 4449237, at *8 n.8 (Tenn. Ct. App. Sept. 29, 2021) (quoting *PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Mabry*, 402 S.W.3d 654, 660 (Tenn. Ct. App. 2012)). "[A] trial court's failure to provide any legal basis for its dismissal of a Rule 12.02 motion to dismiss can hamper this Court's ability to review the dismissal on appeal." *Crenshaw v. Kado*, No. E2020-00282-COA-R3-CV, 2021 WL 2473820, at *6 (Tenn. Ct. App. June 17, 2021); *see, e.g., Buckingham v. Tenn. Dep't of Corr.*, No. E2020-01541-COA-R3-CV, 2021 WL 2156445, at *2-3 (Tenn. Ct. App. May 27, 2021) (vacating a Rule 12 order of dismissal that did not provide any reasoning when this Court was unable to ascertain the basis of the trial court's ruling).

Here, however, the trial court's order stated that it was granting all three defendants' motions to dismiss because "the Complaint fails to state a claim upon which relief can be granted . . . pursuant to Tenn. R. Civ. P. 12.02(6)," and "based upon the pleadings filed," "the Court finds that [EPE] lack[s] standing to bring this matter before the Court." Considering that Rule 52.01 exempts a trial court from having to state its findings of fact and conclusions of law on decisions on Rule 12 motions, we discern no reversible error in this case due to the trial court's failure to provide a more detailed explanation. *See, e.g.*, *Crenshaw*, 2021 WL 2473820, at \*6 (proceeding with review after determining that a "bare-bones" order of dismissal was apparently based on the statute of limitations); *PNC Multifamily*, 402 S.W.3d at 660 (declining to vacate a trial court's order resolving a motion for lack of findings "in light of the clear language of Rule 52.01" providing that findings of fact and conclusions of law were not required).

### B.    *Standing*

We now turn to the issue of whether EPE's complaint established that it had standing to seek a declaratory judgment interpreting the Hoops Agreement. Whether a party has standing to maintain an action is a question of law. *Tubbs v. Long*, 610 S.W.3d 1, 15 (Tenn. Ct. App. 2020). "'Lack of standing may be raised as a defense in a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss.'" *Lovett v. Lynch*, No. M2016-00680-COA-R3-CV, 2016 WL 7166407, at \*4 (Tenn. Ct. App. Dec. 8, 2016) (quoting *Dubis v. Loyd*, No. W2015-02192-COA-R3-CV, 2016 WL 4371786, at \*3 (Tenn. Ct. App. Aug. 15, 2016)).

At the outset, we note that EPE's argument regarding why it has standing in this case has been somewhat of a moving target. On appeal, EP continues to pursue various arguments as to why it should have standing to seek a declaratory judgment interpreting the contract.

### 1.    Standing under the Declaratory Judgment Act

First, EPE relies on the plain language of the Declaratory Judgments Act, which provides,

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Tenn. Code Ann. § 29-14-103. EPE claims that it is a "person interested under a . . . written contract . . . or whose rights, status, or other legal relations are affected by a . . . contract," and therefore, it may petition to "have determined any question of construction or validity

arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." *See id.* However, this Court has rejected the notion that the Declaratory Judgments Act "independently confers standing" on a petitioner. *Washington Cty. Educ. Ass'n v. Washington Cty. Bd. of Educ.*, No. E2018-01037-COA-R3-CV, 2019 WL 2537864, at *2 (Tenn. Ct. App. June 20, 2019). Although the Act uses the term interested, "[s]till 'some *real interest* must be in dispute.'" *Heredia v. Gibbons*, No. M2016-02062-COA-R3-CV, 2019 WL 3216623, at *7 (Tenn. Ct. App. July 17, 2019) (quoting *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 838 (Tenn. 2008)) (emphasis added). A declaratory judgment action "is not a ticket to bypass standing." *Massengale v. City of E. Ridge*, 399 S.W.3d 118, 127 (Tenn. Ct. App. 2012). "Relevant case law has held that the expansive powers found in the statute may only be exercised in those situations where the parties can demonstrate the existence of a justiciable controversy[.]" *Oldham v. Am. C.L. Union Found. of Tennessee, Inc.*, 910 S.W.2d 431, 433-34 (Tenn. Ct. App. 1995); *see Reguli v. Guffee*, No. M2015-00188-COA-R3-CV, 2016 WL 6427860, at *2 (Tenn. Ct. App. Oct. 28, 2016) ("Standing is a threshold requirement for actions seeking declaratory relief[.]").

To that end, it is important to note that "'[a] litigant's request for declaratory relief does not alter a suit's underlying nature. Declaratory judgment actions are subject to the same limitations inherent in the underlying cause of action from which the controversy arose.'" *Carter v. Slatery*, No. M2015-00554-COA-R3-CV, 2016 WL 1268110, at *6 (Tenn. Ct. App. Feb. 19, 2016), *perm. app. denied* (Tenn. Aug. 18, 2016), *cert. denied* 137 S.Ct. 669 (2017) (quoting 26 C.J.S. *Declaratory Judgments* § 124)). Stated differently, "a declaratory judgment action is a mere procedural device by which various types of substantive claims may be asserted." *Brackin v. Sumner County*, 814 S.W.2d 57, 61 (Tenn. 1991). "Declaratory judgment acts are remedial or procedural in nature, rather than substantive; they provide an additional remedy for existing rights and neither create nor change substantive rights." 26 C.J.S. *Declaratory Judgments* § 7. Thus, Tennessee's "declaratory judgment statute does not create a cause of action to enforce rights." *Ritchie v. Haslam*, No. M2010-01068-COA-R3-CV, 2011 WL 2520207, at *3 (Tenn. Ct. App. June 23, 2011).

Accordingly, "'in order to maintain an action for a declaratory judgment a justiciable controversy must exist.'" *West v. Schofield*, 460 S.W.3d 113, 130 (Tenn. 2015) (quoting *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 193 (Tenn. 2000)).

> To establish constitutional standing, a plaintiff must satisfy three elements: 1) a distinct and palpable injury; that is, an injury that is not conjectural, hypothetical, or predicated upon an interest that a litigant shares in common with the general public; 2) a causal connection between the alleged injury and the challenged conduct; and 3) the injury must be capable of being redressed by a favorable decision of the court.

- 11 -

*Fisher v. Hargett*, 604 S.W.3d 381, 396 (Tenn. 2020). Regarding the first element, "'[t]he sort of distinct and palpable injury that will create standing must be an injury to *a recognized legal right or interest*." *Washington Cty. Educ. Ass'n*, 2019 WL 2537864, at *3 (quoting *McFarland v. Pemberton*, 530 S.W.3d 76, 105-06 (Tenn. 2017)). "'For a controversy to be justiciable, . . . a legally protectable interest must be at stake.'" *West*, 460 S.W.3d at 130 (quoting *Brown*, 18 S.W.3d at 193); *see also UT Med. Group, Inc. v. Vogt*, 235 S.W.3d 110, 119 (Tenn. 2007) ("To be justiciable, a case must involve . . . parties who have a legally cognizable interest in the issues.") "'Such a legal right or interest may, but not must, be created or defined by statute.'" *McFarland*, 530 S.W.3d at 106 (quoting *Metro. Gov't of Nashville v. Bd. of Zoning Appeals of Nashville*, 477 S.W.3d 750, 755 (Tenn. 2015)). "'The proper focus of a determination of standing is a party's right to bring a cause of action[.]'" *Fisher*, 604 S.W.3d at 396 (quoting *City of Memphis v. Hargett*, 414 S.W.3d 88, 96 (Tenn. 2013)). Thus, "a party's standing may turn on the nature of the claim and requires a determination of whether a plaintiff is entitled to an adjudication of the particular claim." *Id.*

## 2.   An Underlying Contract Claim

Because "it is the underlying cause of action . . . that is actually litigated in a declaratory judgment action," the party bringing a declaratory judgment action must have been a proper party had suit been brought on the underlying cause of action. 22A Am. Jur. 2d *Declaratory Judgments* § 214 (citing *Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990)); *see also Denius v. Morton*, No. 05-92-02501-CV, 1994 WL 159847, at *2 (Tex. App. Apr. 28, 1994), *writ denied* (Tex. July 28, 1994) ("A party requesting a declaratory judgment must be a proper party to the underlying causes of action addressed in the declaratory request."). So, in order to determine whether a declaratory judgment action presents a justiciable case, we must "identify the law underlying the request for a declaratory judgment." *Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 636 (9th Cir. 2014). For instance, in *Brackin*, 814 S.W.2d at 58, two separate issues were presented to the Tennessee Supreme Court regarding whether the plaintiff had "standing to file an election contest" and "standing to file a declaratory judgment action." After concluding that the plaintiff had standing to file the election contest, the Supreme Court likewise found that the plaintiff had standing to file the declaratory judgment action. *Id.* at 59-61. In reaching its conclusion, the Court noted that a declaratory judgment action seeking to have an election deemed void was in reality an election contest, as "a declaratory judgment action is a mere procedural device by which various types of substantive claims may be asserted." *Id.* at 60-61.

Here, the substantive basis underlying EPE's request for declaratory relief is contractual. "Generally, contracts are presumed to be 'executed for the benefit of the parties thereto and not third persons.'" *Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001) (quoting *Oman Constr. Co. v. Tenn. Cent. Ry. Co.*, 370 S.W.2d 563, 572 (Tenn. 1963)). "[A] third party may seek to recover

- 12 -

under a contract, but the third party bears the burden of proving, from the terms of the contract or the circumstances surrounding its execution, that, *at the time of contracting*, he was an intended third-party beneficiary of the contract." *Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886, 899 (Tenn. 2016).[3]  However, "[i]f the contractual benefits flowing to the third party are merely incidental, rather than intended, the third party may not recover under the contract." *Id.*; *see, e.g., Scott v. Ditto*, No. E2014-02390-COA-R3-CV, 2016 WL 4572507, at *7 (Tenn. Ct. App. Aug. 31, 2016) (noting an appellant's argument that a lender did not comply with the terms of a note and deed of trust in a foreclosure sale but concluding that he "was not a party to nor a third-party beneficiary of the contracts" and therefore had "no standing to complain about whether the sale complied with the terms of the contract").

Furthermore, in the particular context of third-party beneficiary rights under contracts with governmental entities, Tennessee courts have held:

> A contract entered into by a governmental entity requires a showing that the contract was intended by the parties to confer a direct obligation to identifiable third-party entities.  Every contract into which a governmental entity enters is made for the benefit of all its citizens.  Only when such a contract manifests a specific intent to grant individual citizens enforceable rights thereunder may a citizen claim such rights as a third-party beneficiary.

*Coburn v. City of Dyersburg*, 774 S.W.2d 610, 612 (Tenn. Ct. App. 1989); *see also Wells ex rel. Baker v. State*, 435 S.W.3d 734, 758 (Tenn. Ct. App. 2013).  Thus, "[t]he law on third-party beneficiary status is such that intent to confer such rights must be clear, particularly where governments are actors."[4]  *Citizens For Safety & Clean Air v. City of Clinton*, 434 S.W.3d 122, 131 (Tenn. Ct. App. 2013).  "When one of the parties to a contract is a governmental entity, the person attempting to establish rights as a third-party

---

[3]  Generally, a nonparty may be deemed an intended third-party beneficiary of a contract and entitled to enforce the contract's terms if:

> (1) The parties to the contract have not otherwise agreed;
> (2) Recognition of a right to performance in the [third party] is appropriate to effectuate the intention of the parties; and
> (3) The terms of the contract or the circumstances surrounding performance indicate that either:
> (a) the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the [third party]; or
> (b) the promisee intends to give the [third party] the benefit of the promised performance.

*Wallis*, 509 S.W.3d at 899 (citing *Owner–Operator*, 59 S.W.3d at 70).

[4] According to one author, this rule is necessary because otherwise "all citizens could be third-party beneficiaries of every government contract," which "would expand the public body's liability beyond all reasonable limits."  21 *Tenn. Prac. Contract Law & Practice* § 3:31.

must show that he or she is specifically intended to have the benefit of the contract[.]" *Smith v. Chattanooga Med. Invs., Inc.*, 62 S.W.3d 178, 185 (Tenn. Ct. App. 2001). In *Coburn*, for example, the plaintiff "made no such showing" and therefore was "merely an incidental beneficiary [with] no right to assert remedies properly reserved for parties to the [] contract." 774 S.W.2d at 612.

Application of these related principles can be illustrated by examining the facts in *Kruger v. State*, No. W2012-00229-COA-R3-CV, 2013 WL 781135 (Tenn. Ct. App. Feb. 28, 2013). *Kruger* involved a property owner who desired to operate a daycare center on her property and a separate group who planned to operate an outdoor shooting range on nearby property, which it claimed to lease from the State of Tennessee. *Id.* at *1. The individual and other residents filed a petition for declaratory judgment in an effort to stop the shooting range, claiming that they would be "adversely affected" by it. *Id.* at *3. Among other things, the petition alleged that the shooting range property had never been used as a shooting range before, and therefore, pursuant to a condition set forth in the lease with the State, the lease had been automatically cancelled and the property had reverted to the State. *Id.* The petitioners sought a declaratory judgment that the lease between the State and the shooting association was invalid, null, and void. *Id.* at *4. In response, the State, the county, and the shooting association moved to dismiss. *Id.* at *4-5. The State argued that the petitioners "lacked standing to challenge the Lease, as they were 'strangers' to it." *Id.* at *4. The County similarly argued that the petitioners lacked standing because "they had no 'real interest' in the Lease." *Id.* The shooting association argued there was no distinct and palpable injury. *Id.* The trial court agreed that the petitioners lacked standing to bring their declaratory judgment action because they failed to demonstrate a distinct and palpable injury (and other elements). *Id.* at *6. The trial court noted that the parties to the lease represented that the lease was valid and it was not clear whether the State had simply chosen to disregard the termination provision at issue, but in any event, "it [wa]s immaterial if the parties to the lease agreed that it was binding upon them." *Id.* This Court affirmed dismissal, explaining that "'declaratory relief is available only to parties who have a real interest in the litigation.'" *Id.* at *8 (quoting *Williams v. Hirsch*, No. M2010-02407-COA-R9-CV, 2011 WL 303257, at *2 (Tenn. Ct. App. Jan. 25, 2011)). The petitioners were not parties to the lease or third-party beneficiaries thereunder, and they lacked standing to bring their declaratory judgment action. *Id.* at *10.[5]

---

[5] On appeal, EPE cites a different case in which a third-party *was* held to have standing to challenge a lease executed by a city. *See Trails End Campground, LLC v. Brimstone Recreation, LLC*, No. E2014-00336-COA-R3-CV, 2015 WL 388313 (Tenn. Ct. App. Jan. 29, 2015). However, that case was an action for violation of the Tennessee Trade Practices Act, violation of the Tennessee Constitution, and *ultra vires* acts. *Id.* at *4. This Court held that the petitioner had standing because it "alleged unlawful activity by the defendants that caused injury not common to the general public." *Id.* at *6. However, the case did not involve a standalone request for declaratory judgment interpreting a contract to which the petitioner was not a party. Thus, this case is more like *Kruger* than *Trails End* (and other cases cited by EPE). *See Petty v. Daimler/Chrysler Corp.*, 91 S.W.3d 765, 768 (Tenn. Ct. App. 2002) ("Standing often depends on the nature of the claim. The inquiry therefore demands careful judicial examination of the complaint's

Keeping these principles in mind, we must examine the allegations in the complaint before us. "Every standing inquiry requires a 'careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.'" *City of Memphis*, 414 S.W.3d at 97 (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)). "'When we address standing based solely on the pleadings, we must accept the allegations of fact as true, however, inferences to be drawn from the facts or legal conclusions set forth in the complaint are not required to be taken as true.'" *Keller v. Estate of McRedmond*, 495 S.W.3d 852, 867 n.20 (Tenn. 2016) (internal quotation omitted). Notably, "standing is a legal conclusion and not a fact," and as such, a trial court is not required to accept as true a plaintiff's allegation of standing. *State ex rel. Watson v. Waters*, No. E2009-01753-COA-R3-CV, 2010 WL 3294109, at *4 (Tenn. Ct. App. Aug. 20, 2010). "The pleading party has the burden of proving that the controversy is justiciable and of establishing the facts needed to bring an action." *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 417 (Tenn. 1997). "In order to invoke action by a court under the declaratory judgment act, the person seeking a declaratory judgment must allege facts which show he has a real, as contrasted with a theoretical, interest in the question to be decided and that he is seeking to vindicate an existing right under presently existing facts." *Burkett v. Ashley*, 535 S.W.2d 332, 333 (Tenn. 1976).

### 3.    Negative Impact on EPE

Here, EPE's complaint contained a separate section specifically addressing the matter of standing. One of the bases on which EPE claimed standing was "the impact that The [Hoops] Agreement is having on The Graceland TIF and EPE's other legal rights, interests, and privileges." On appeal, EPE maintains that it has alleged a distinct and palpable injury and invasion of its legal rights that is sufficient to establish standing due to this claimed "negative impact." According to its brief, "EPE disagrees with Defendants' position that only the parties to a contract or intended third-party beneficiaries of the contract have standing to sue to enforce the agreement." EPE argues that "it is **irrelevant** to this Court's analysis that EPE is not a party to the [Hoops Agreement]." According to EPE, "the focus of this Court's review of EPE's request for a declaratory judgment is **not** EPE's status with regard to the [Hoops Agreement] – it is the harm inflicted upon EPE by The City's enforcement of the [Hoops Agreement]." EPE argues that because it is "directly affected" by the contract at issue and seeking "to **protect its own rights and privileges**," it has established standing.

EPE bases this argument on this Court's decision in *Calfee v. Tennessee Department of Transportation*, No. M2016-01902-COA-R3-CV, 2017 WL 2954687 (Tenn. Ct. App. July 11, 2017). However, *Calfee* involved a petition for a declaratory order and petition for declaratory judgment under Tennessee's Uniform Administrative Procedures Act,

allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted.") (quotation omitted).

- 15 -

Tenn. Code Ann. §§ 4-5-223, -225. As this Court noted in *Calfee*, Tennessee Code Annotated section 4-5-223(a) provides, "Any *affected person* may petition an agency for a declaratory order as to the validity or applicability of a statute, rule or order within the primary jurisdiction of the agency." *Id.* at *2 (emphasis added). Further, Tennessee Code Annotated section 4-5-225(a) provides,

> The legal validity or applicability of a statute, rule or order of an agency to specified circumstances may be determined in a suit for a declaratory judgment in the chancery court of Davidson County, unless otherwise specifically provided by statute, if the court finds that the statute, rule or order, or its threatened application, *interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the complainant.*

(emphasis added). "Thus, under the Administrative Procedures Act, a court may issue a declaratory judgment if an 'affected person' seeks that relief and if the rule or order, or its application, interferes with, impairs, or threatens to interfere with the person's rights." *Id.* at *5 (quoting *Boles v. Tenn. Dep't of Corr.*, No. M2000-00893-COA-R3-CV, 2001 WL 840283, at *2 (Tenn. Ct. App. July 26, 2001)). Tracking the italicized language of the statutes, this Court considered whether the petitioners "were directly 'affected' by the TDOT use and occupancy permit at issue within the meaning of the Uniform Administrative Procedures Act." *Id.* at *6. EPE likewise relies on the italicized language above, arguing that it is "affected" and that the contract "threatens to interfere with" its rights or privileges. However, those statutes are simply inapplicable in this case. EPE interprets *Calfee* as holding that "a third party has standing to protect its legal rights when it is threatened by a contract to which it is not a party." However, *Calfee* simply does not say this. It did not involve a contract, and the word contract is never used in the *Calfee* opinion. Thus, *Calfee* did not discuss (or need to discuss) the rules set forth above regarding who has standing to seek a declaratory judgment regarding a contract, nor does it alter those rules.

Contrary to EPE's argument, the applicable standing analysis, in this case, does not merely focus on whether EPE was "affected" by the contract; we must consider EPE's relationship to the contract at issue. The Tennessee Supreme Court recently examined who were "necessary parties" to a declaratory judgment action regarding an insurance contract in *Tennessee Farmers Mutual Insurance Co. v. DeBruce*, 586 S.W.3d 901, 903 (Tenn. 2019). Although the analysis did not center on the issue of "standing," we nevertheless find the court's discussion instructive on the issue before us. In *DeBruce*, an insurance company filed a declaratory judgment action against its insured under the Declaratory Judgments Act, Tenn. Code Ann. § 29-14-101 et seq. *Id.* at 904. The insurance company sought a declaratory judgment that it had no duty to provide a defense to its insured in a pending personal injury suit or to indemnify the insured for any damages awarded in the personal injury suit due to the insured's failure to cooperate with the insurer in the investigation of the subject accident. *Id.* Eventually, the plaintiff in the separate personal

injury suit sought to intervene in the declaratory judgment action between the insurer and the insured, asserting that she was an indispensable party and had "a direct interest in the outcome of the case." *Id.* The trial court held that the personal injury plaintiff's interest was insufficient to make her a necessary party because she was merely an incidental beneficiary of the insurance contract. *Id.* The case made its way to the Tennessee Supreme Court. The Supreme Court noted that the Declaratory Judgments Act provides that "'[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings." *Id.* at 906 (quoting Tenn. Code Ann. § 29-14-107(a) (2012)). However, it also noted that "[d]eclaratory relief will be granted 'only to parties who have a *real interest* in the litigation and when the case involves present rights that have accrued under presently existing facts.'" *Id.* (quoting *Dobbs v. Guenther*, 846 S.W.2d 270, 275 (Tenn. Ct. App. 1992)) (emphasis added). The Court explained that "[p]arties who might be remotely affected by the declaratory judgment need not be joined," and in fact, "[t]he Act contemplates that there may be parties whose rights are affected but who are not joined in the declaratory judgment action." *Id.* at 906-907. Thus, the personal injury plaintiff's status as a necessary party hinged on whether she had a sufficient interest that would be affected by the declaration. *Id.* at 907. The Court concluded that "[i]f [the personal injury plaintiff] was an intended beneficiary of the insurance policy, she would have an interest that would be affected[.]" *Id.* However, the Court noted that contracts are presumed to be "for the benefit of the parties to the contract and not for the benefit of third parties." *Id.* In the insurance context, a nonparty "can become an intended beneficiary of an insurance policy when the claimant obtains a judgment against the insured." *Id.* "[A] claimant with a judgment against an insured can bring a direct action against the insurance company." *Id.* Thus, "a third party who had obtained a judgment . . . would be entitled to enforce the insurance contract[.]" *Id.* at 908. Stated differently, a plaintiff who had obtained a judgment "would have had a *real interest in the contract* of insurance." *Id.* (emphasis added). On the other hand, a claimant without a judgment would only have "a remote interest that has not accrued into a real interest in the insurance policy" and "cannot bring a direct action against the insurance company to recover damages under the policy." *Id.* Because the particular plaintiff in *DeBruce* had not obtained a judgment, "she had no interest that would be affected by the declaratory judgment action." *Id.* Notably, the Supreme Court concluded, "*the justiciable dispute was only between Tennessee Farmers and DeBruce*." *Id.* at 909 (emphasis added). Thus, *DeBruce* indicates that it is not enough to simply claim any conceivable "interest" in the contract at issue in a declaratory judgment action. "[S]ome real interest must be in dispute." *Colonial Pipeline Co.*, 263 S.W.3d at 838.

Again, "'[t]he sort of distinct and palpable injury that will create standing must be an injury to *a recognized legal right or interest*." *Washington Cty. Educ. Ass'n*, 2019 WL 2537864, at *3 (quoting *McFarland*, 530 S.W.3d at 105-06). In the case before us, then,

EPE must show that it is either a party to or a third-party beneficiary of the contract.[6] *Cf. Lopez v. Taylor*, 195 S.W.3d 627, 635 (Tenn. Ct. App. 2005) (noting that the children of divorced parents had "legally protectable interests in [their parents'] marital dissolution agreement" because they were intended third-party beneficiaries of its college expense provision).

## 4. Interpretation versus Enforcement

EPE next argues that "it does not matter that EPE is not a party to The [Hoops] Agreement because EPE is not suing to *enforce* The [Hoops] Agreement." EPE contends that it is only seeking an interpretation of the contract in order to protect its rights and to prevent the parties to the contract from wrongful "enforcement" of it. We are not persuaded that this distinction makes a difference. EPE is seeking a declaration that would bind the parties to the contract. "Where [parties] do not have a right to enforce the contract themselves, and where they are not third party beneficiaries to the contract, no standing exists under the Declaratory Judgment Act to bring an action to determine the rights of the parties under the contract." *Farmers Ins. Co. v. Miller*, 926 S.W.2d 104, 107 (Mo. Ct. App. 1996) (citing *American Economy Ins. Co. v. Ledbetter*, 903 S.W.2d 272, 275-76 (Mo. Ct. App. 1995)). "One who seeks to have a written contract construed by way of declaratory judgment must first have an interest thereunder. Absent an enforceable contract right, an action for declaratory relief to construe or apply a contract will not lie." *Terrell v. Laws. Mut. Liab. Ins. Co. of N. Carolina*, 131 N.C. App. 655, 660-61 (1998) (citations omitted). *See, e.g.*, *Carden v. Missouri Intergovernmental Risk Mgmt. Ass'n*, 258 S.W.3d 547, 558

---

[6] For instance, in *Wells v. Bank of Nevada*, 90 Nev. 192, 197 (1974), the petitioners sought a declaratory judgment regarding the validity and enforceability of a contract to which they were not parties on the basis that their inheritance would be "affected . . . in a practical, as distinguished from a legal sense." However, no dispute existed between the parties to the agreement, and they asked that it be performed according to its terms. *Id*. The Nevada Supreme Court explained, "Controversies arising under an agreement properly are to be determined and settled by parties to the agreement or their assigns, that is, by those who have legal rights or duties thereunder." *Id*. Although the Declaratory Judgments Act used the term "affected," the Court explained that it was "directed only to those who enjoy a legal interest in the agreement under scrutiny." *Id.* at 197-98. Absent evidence of third-party beneficiary status or an assignment, "[t]he complaining heirs ha[d] no rights, duties or obligations under the [] agreement and thus [did] not have standing as interested persons to challenge the contract in a declaratory judgment action." *Id.* at 197-98. *See also Midwest Psychological Ctr., Inc. v. Indiana Dep't of Admin.*, 959 N.E.2d 896, 903 (Ind. Ct. App. 2011) ("Midwest sought declaratory relief with respect to two different contracts. . . . Midwest was not a party to either, was not in privity with the parties, and was not a third party beneficiary. Accordingly, Midwest has no rights under either contract and cannot establish standing as a person interested under the contracts."); *Beachcomber Properties, L.L.C. v. Station One, Inc.*, 169 N.C. App. 820, 824 (2005) (explaining that a petitioner who was not a party to a contract had no "enforceable contract right" and "no legally protected interest, or 'injury in fact,' and therefore lack[ed] standing to bring this declaratory action"); *Finnegan, Henderson, Farabow, Garrett & Dunner, LLP v. Mercer*, No. 10-09-00250-CV, 2009 WL 5155999, at *5 (Tex. Ct. App. Dec. 30, 2009) (concluding that a third-party with "no enforceable contractual rights" under an agreement had no standing to sue for declaratory relief regarding the agreement).

(Mo. Ct. App. 2008) ("The only standing Appellant has to obtain a declaration of his rights, status, and legal relationship under these contracts is if he is a party to the contracts or he is a third party beneficiary to the contracts. Being neither, Appellant has no standing to maintain a direct action for declaratory judgment against Respondents.") (citation omitted); *St. Paul Fire & Marine Ins. Co. v. Med. Protective Co. of Fort Wayne, Ind.*, 675 S.W.2d 665, 667 (Mo. Ct. App. 1984) ("St. Paul has no standing under the Declaratory Judgment Act to request the court to interpret the contract of insurance purchased by Dr. Hite from defendant Medical Protective. . . . No authority has been cited to this court and we find none which would authorize or grant standing to seek a declaration of rights under a contract to one who is not a party and who has no right to enforce the contract.").

## 5. Third-Party Beneficiary

EPE's next argument on appeal is that it was a third-party beneficiary of the Hoops Agreement, and therefore, it has standing to sue for an interpretation of it. The problem with this argument is that there is no mention of it in EPE's complaint. It specifically addressed standing and alleged that EPE's rights were impacted or injured by the contract, but it never asserted that it was a third-party beneficiary of the contract. The defendants noted in their motions to dismiss for failure to state a claim that EPE's complaint never alleged that EPE was a third-party beneficiary of the Hoops Agreement. In its response to the defendants' motions to dismiss, EPE did argue that it was a third-party beneficiary of the contract. However, at this stage, we are reviewing the sufficiency of the allegations in the complaint. There is simply nothing in the complaint to support this late-raised third-party beneficiary theory. A "'non-party who wishes to enforce a contract has the burden of proving that he is entitled to recover as a third-party beneficiary.'" *McPherson v. Shea Ear Clinic*, No. W2006-01936-COA-R3-CV, 2007 WL 1237718, at *4 (Tenn. Ct. App. Apr. 27, 2007) (quoting *Smith*, 62 S.W.3d at 185).

EPE argues that a third-party beneficiary issue is not appropriate for adjudication by a Rule 12.02(6) motion to dismiss. We disagree. "[T]he question of whether a contract was intended for the benefit of a third person is generally regarded as one of construction," and therefore, a question of law. *Amsouth Erectors, LLC v. Skaggs Iron Works, Inc.*, No. W2002-01944-COA-R3-CV, 2003 WL 21878540, at *3 (Tenn. Ct. App. Aug. 5, 2003) (rejecting an appellant's argument that the issue of third-party beneficiary status was a question of fact that should not have been decided by way of summary judgment); *see also Wallis*, 509 S.W.3d at 899 ("Determining whether a contract was intended to benefit a third party is a matter of contract construction."). "When determining third party beneficiary status, courts examine the specific promise which the third parties contend was intended to benefit them." *Doramus v. Rogers Grp., Inc.*, No. M1998-00918-COA-R3-CV, 2001 WL 196974, at *16 (Tenn. Ct. App. Feb. 28, 2001). Courts have considered the issue in the context of Rule 12 motions. For example, in *J.S. Haren Co. v. City of Cleveland*, No. E2002-01327-COA-R3-CV, 2003 WL 21276662, at *4, *1 (Tenn. Ct. App. May 30, 2003), a plaintiff claimed that he was an intended third-party beneficiary of a contract between

the Tennessee Department of Transportation and a city's utility board, but the trial court granted the defendants' motions to dismiss for failure to state a claim. On appeal, this Court explained that "'[g]enerally, contracts are presumed to be 'executed for the benefit of the parties thereto and not third persons.'" *Id.* (quoting *Owner-Operator*, 59 S.W.3d at 68). We explained that the Tennessee Supreme Court had adopted specific criteria in *Owner-Operator* for determining whether a party qualifies as a third-party beneficiary of a contract so as to vest it with standing to sue on that contract. *Id.* "Viewing [the plaintiff's] complaint in the light of [those] criteria," we concluded that it failed to state a claim for which relief could be granted. *Id.* at *5. The complaint did not state facts that would "satisfy the language" of the *Owner-Operator* criteria. *Id.* We said,

> To survive a motion to dismiss, a complaint must allege facts that show the existence of a valid claim for relief. The complaint before this Court makes only conclusory statements bearing on the *Owner–Operator* factors. This is not enough. The complaint fails to properly allege a claim based upon a theory of third-party beneficiary to a contract.

*Id.* Thus, we affirmed dismissal for failure to state a claim. *Id.* at *7; *see also Clay v. First Horizon Home Loan Corp.*, 392 S.W.3d 72, 80 (Tenn. Ct. App. 2012) (concluding on interlocutory appeal that a trial court erred in denying a motion to dismiss a third-party beneficiary claim for failure to state a claim); *TIG Ins. Co. & Fairmont Specialty Grp. v. Titan Underwriting Managers, LLC*, No. M2007-01977-COA-R3-CV, 2008 WL 4853081, at *3 (Tenn. Ct. App. Nov. 7, 2008) ("Titan failed to establish that it was an intended beneficiary of the contract and, therefore, failed to state a claim for breach of contract."); *First Tenn. Bank Nat. Ass'n v. Thoroughbred Motor Cars, Inc.*, 932 S.W.2d 928, 929 (Tenn. Ct. App. 1996) (affirming dismissal for failure to state a claim upon which relief could be granted because the plaintiff was not a party or an intended beneficiary of the agreement and therefore lacked standing to sue under the agreement); *Heyward v. CDM Smith, Inc.*, No. 3:13-CV-645-PLR-HBG, 2014 WL 4957383, at *3 (E.D. Tenn. Oct. 3, 2014) ("There is nothing in the complaint alleging the government entered into contracts with the defendants for the specific purpose of employing and benefiting the plaintiff. Because the plaintiff is an incidental third party beneficiary, she lacks standing to sue to enforce the contracts at issue and Counts V and VI will be dismissed."); *Fossett v. Corp. Express Inc.*, No. 09-2321-STA, 2010 WL 145346, at *2 (W.D. Tenn. Jan. 8, 2010) ("Plaintiff has failed to allege that he was a party to the MLGW contract or that he was an intended third-party beneficiary to the MLGW contract. Therefore, Plaintiff has failed to state any claim for the breach of that contract.").

Consistent with these cases, we conclude that EPE's complaint failed to state a claim regarding third-party beneficiary status. This is not a case where the complaint contained bare legal assertions regarding third-party beneficiary status. This complaint contained *no* allegation that EPE was a third-party beneficiary. As such, it did not identify any contractual language that would support such a claim, nor did it include factual allegations

- 20 -

relevant to the particular requirements applicable when a party seeks to assert a third-party beneficiary claim under a governmental contract. *See Coburn*, 744 S.W.2d at 612. Thus, we conclude that EPE failed to state a claim for relief as a third-party beneficiary. "'[T]here is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint.'" *Moses v. Dirghangi*, 430 S.W.3d 371, 378 (Tenn. Ct. App. 2013) (quoting *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 704 (Tenn. 2002)).

### 6. "Conferred" Standing via the County Resolution

Having found that EPE was not a party to the Hoops Agreement and did not sufficiently allege that it was a third-party beneficiary of it, we now consider EPE's argument that the County, which is a party to the contract, "conferred" standing on EPE. The precise *legal* basis for this argument was not clear from the complaint. It simply alleged that standing had been "conferred" on EPE by *both* the County resolution and the EDGE resolution, "including their specific mandates requiring EPE to have this Court interpret The [Hoops] Agreement." It alleged that "pursuant to the terms of The EDGE Resolution and The County Resolution, . . . EPE must obtain a declaration from this Court declaring that The Arena does not violate the terms of The [Hoops] Agreement." EPE alleged that the County Commission "specifically instructed and ordered EPE to obtain this interpretation before EPE can move forward[.]" It alleged that "[a]s a party to The [Hoops] Agreement, The County has authority to issue this mandate and confer standing upon EPE." It alleged:

> 82. . . . [W]hile The County Resolution unequivocally grants EPE's Supplemental Economic Plan (thereby expanding the many legal interests, rights and privileges that EPE has under The Graceland TIF), The County Resolution also mandates that EPE take certain action with respect to The [Hoops] Agreement, to which The County Commission is a party as an arm of The County.
> 83. More specifically, The County Commission (via The County Resolution) instructed and authorized EPE to come into The Chancery Court for Shelby County, Tennessee, and have this Court provide a declaration as to the proper interpretation of the Non-Participation Provision contained in The [Hoops] Agreement. To wit:
>
> > NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF COUNTY COMMISSIONERS OF SHELBY COUNTY, TENNESSEE, That the attached Supplement to the Economic Impact Plan for Graceland Economic Development Area, attached hereto as Exhibit B and incorporated herein by reference, is hereby approved contingent upon either (i) a final, binding, non-appealable ruling, in the pending litigation in the Chancery Court for Shelby County, Tennessee for the Thirtieth

Judicial District at Memphis. No. CH-17-1653 or any subsequently filed litigation (the "Arena Litigation") or (ii) a binding agreement by the parties settling the conflict and approved in advance by the EDGE Board, which binding, non-appealable ruling or settlement agreement has the effect of providing that either (A) the Arena is not a Competing Facility under the Memphis Arena Use and Operating Agreement by and among the City of Memphis and Shelby County, Tennessee and Hoops, L.P., as amended ("Contract"), or (B) that the Arena does not violate the Non-Competition covenant in the Contract, or (C) that the actions of EDGE, the City of Memphis and County of Shelby, Tennessee in approving the Arena conform with Section 30(c) of the Contract, as amended in Section (f) of the Second Amendment to Contract, by the Economic Development Growth Engine Industrial Development Board of the City of Memphis and County of Shelby, Tennessee.

*See* The County Resolution, Exhibit H, at p.2.

Thus, the complaint made clear that the basis for its "conferred" standing argument was the language in the County and EDGE resolutions. In response, the County and the other defendants filed motions to dismiss disputing the allegation that the County had "conferred" standing on EPE through the County resolution. They argued that nothing in the resolution "mandated" that EPE go to court to obtain a declaratory judgment, as EPE alleged in the complaint.[7] EPE then filed its emergency motion to convert the motions to

_____

[7] The City also noted there was nothing in the language of the resolution that would constitute an assignment of contractual rights, and in any event, the Hoops Agreement prohibited assignments without the consent of Memphis Basketball. During a hearing in the trial court, counsel for EPE noted that the defendants had responded to the complaint by analyzing the issue of contractual assignments, but he clarified that EPE's position was based on an agency theory. He said,

> But [Defendants] also raised that the County Commission did not assign any rights to [EPE] and [EPE] hadn't even argued that there would be any assignment.
> What our Complaint alleges is that we're an agent of the County and . . . the County acting via County Commission intended to grant EPE standing or to make us an agent, become internal, obtain his interpretation. . . .
> . . . [T]hey say, an assignment, but if you read the Complaint and accept the fact [as] true, it's an Agency argument that they intend to make us an agent.

On appeal, EPE likewise argues that the County "conferred standing" on EPE by making EPE its agent, with no analysis of contractual assignments aside from a cursory statement in its reply brief. Thus, we will not consider the separate issue of whether the County resolution would have constituted a valid contractual assignment of rights. *See Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773-74 (2000) (noting "the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the

- 22 -

dismiss into motions for summary judgment and to allow time for discovery on the issue of standing, suggesting, for the first time, that the County resolution created an agency relationship.

When considering whether the allegations of a complaint have stated a claim based on agency, this Court has stated:

> Appellants['] use of the word "agency," or even the allegation of an agency relationship, is not sufficient to state a claim upon which relief can be granted. These are merely legal conclusions which are not required to be taken as true. *Riggs v. Burson*, 941 S.W.2d 44, 47-48 (Tenn. 1997). Appellants must allege sufficient facts that, if proven, would give rise to liability. *Trau–Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 697. They failed to do so.

*Mathes v. DRD Knoxville Med. Clinic*, No. E2010-01809-COA-R3-CV, 2011 WL 1402879, at *8 (Tenn. Ct. App. Apr. 13, 2011); *see also Davis v. Covenant Presbyterian Church*, No. M2013-02273-COA-R3-CV, 2014 WL 2895898, at *4 (Tenn. Ct. App. June 23, 2014) (concluding that a complaint failed to state a claim based on an agency relationship where it asserted the legal conclusion of "actual and/or apparent authority" but failed to allege facts to show that the alleged principals authorized the alleged agents "to act on their behalf," controlled the alleged agents, or directed or authorized the conduct at issue).

Here, the complaint generally alleged that the County "mandated that EPE obtain this declaration from this Court," and "[a]s a party to The [Hoops] Agreement, The County has authority to issue this mandate and confer standing upon EPE." Still, within the complaint, EPE never purported to be acting *on behalf of* the County or as an agent of the County. To the contrary, EPE was named as the plaintiff, and the County was named as a defendant. Thus, the complaint clearly establishes that EPE was acting on its own behalf, not as an agent of the County.

Moreover, the complaint repeatedly alleged that the source of the purported "mandate" was the County resolution. The interpretation of the County resolution was a

---

assignor" and concluding that standing was thereby "confer[red]" on the respondent); *Bowers v. Est. of Mounger*, 542 S.W.3d 470, 483 (Tenn. Ct. App. 2017) (finding that the plaintiff had standing "as assignee" of a party's rights under an agreement); *see also Action Chiropractic Clinic, LLC v. Hyler*, 467 S.W.3d 409, 412 (Tenn. 2015) ("For an assignment to be valid, it must contain clear evidence of the intent to transfer rights, must describe the subject matter of the assignment, must be clear and unequivocal, and must be noticed to the obligor.") (quotation omitted); *Am. Fed'n of Musicians of the U.S. & Canada v. Rural Media Grp., Inc.*, No. 3:20-CV-00318, 2021 WL 848699, at *5-6 (M.D. Tenn. Mar. 5, 2021) (finding no intended third-party beneficiary rights but declining to address the possibility that the parties might have assigned their rights when the complaint made no such claim).

matter of law. *See Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 415 (Tenn. 2013). Looking at the plain language of the resolution, it does not create an agency relationship. As the County notes in its brief on appeal, "[t]here is nothing in the language of the County Resolution that even remotely hints at the creation of a principal-agent relationship between Shelby County and EPE." It simply approved EPE's supplemental plan "*contingent upon* either (i) a final, binding, non-appealable ruling, in the pending litigation in the Chancery Court for Shelby County, Tennessee for the Thirtieth Judicial District at Memphis, No. CH-17-1653 or any subsequently filed litigation (the "Arena Litigation") or (ii) a binding agreement by the parties settling the conflict," if either had the effect of providing that the Hoops Agreement would not be violated. (emphasis added). Thus, the County did not confer standing to act *on its behalf* via the County resolution. *See Haskins v. Yates*, No. 88-99-II, 1988 WL 80967, at \*2 (Tenn. Ct. App. Aug. 5, 1988) (stating that the issue of agency is normally a question of fact when based on the conduct of the parties but that it would be a question of law where it was based on a written instrument); *cf. Tenn. Farmers Life Reassurance Co. v. Rose*, 239 S.W.3d 743, 749-50 (Tenn. 2007) (explaining that "execution of a power of attorney creates a principal-agent relationship," the "language of a power of attorney determines the extent of the authority conveyed," and "powers of attorney should be interpreted according to their plain terms" as the legal effect of a written instrument is a question of law) (citations omitted).

EPE also argues on appeal that it "explained *ad nauseum* in its Complaint that The County (via The County Resolution) specifically instructed, authorized, and ordered EPE to obtain an interpretation of The [Hoops] Agreement," and so the trial court was obligated to take this allegation as true. (underlining added). However, the resolution was attached to the complaint, and the trial court was not required to take as true EPE's characterization of that document. *See Strategic Cap. Res., Inc. v. Dylan Tire Indus., LLC*, 102 S.W.3d 603, 607 (Tenn. Ct. App. 2002) ("[A]llegations in a complaint as to the meaning and interpretation of written contracts are not admitted by a 12.02(6) motion."); *Humphries v. W. End Terrace, Inc.*, 795 S.W.2d 128, 133 (Tenn. Ct. App. 1990) ("The allegations made by plaintiffs as to the meaning and interpretation of the policy of insurance attached as an exhibit to the complaint are not admitted by the motion to dismiss and the legal effect of such a policy is a question of law for the court.").

### 7.   Discovery

Next, EPE argues that the trial court erred in denying it the opportunity to conduct discovery on the issue of standing and agency prior to dismissing the complaint. The trial court has wide discretion over discovery matters. *Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992). Before the trial court, EPE argued that discovery was necessary because the very issue of agency necessarily required the court to consider matters of intent and to go beyond the four corners of the complaint, the Hoops Agreement, and the resolution. Again, however, the trial court was not required to stray into issues of intent based on agency and conduct when there were no allegations in EPE's complaint on such matters. The

complaint did not allege any agency relationship or the elements to establish such a relationship, and it did not assert that standing was conferred independent of the County resolution. Instead, the complaint alleged that the County had conferred standing "via the County resolution." The plain language of the resolution, attached to the complaint, did not support EPE's theory.

Although EPE contended that "testimony from County Commissioners" regarding "the intent and purpose of The County Resolution" should have been explored, EPE did not make any allegations in the complaint regarding this issue. Instead, it alleged that standing was conferred via the unambiguous County resolution attached to its complaint. Accordingly, discovery regarding the motivation of individual commissioners would not have benefitted EPE. *See Reese v. Waters of Clinton, LLC*, No. E2020-01466-COA-R3-CV, 2021 WL 3401285, at *9 (Tenn. Ct. App. Aug. 4, 2021) (affirming the trial court's denial of a motion to compel discovery and grant of a motion to dismiss, noting that "[e]ven if Plaintiff were permitted to conduct discovery, we know of nothing that Plaintiff possibly could learn during discovery that would permit her to succeed . . . under these circumstances"); *Tenn. Realty Dev., Inc. v. State, Dep't of Transp.*, No. W2008-00722-COA-R3-CV, 2008 WL 5396247, at *4 (Tenn. Ct. App. Dec. 29, 2008) ("[F]urther discovery would have been of no benefit to Appellant, as Rule 12.02 motions to dismiss test only the sufficiency of the complaint.").

We discern no reversible error in the trial court's decision to resolve the motions to dismiss for failure to state a claim without granting EPE the opportunity to conduct further discovery. *See Smith v. Hughes*, No. W2020-01228-COA-R3-CV, 2021 WL 1779410, at *5 (Tenn. Ct. App. May 5, 2021) *perm. app. denied* (Tenn. Sept. 22, 2021) (finding no abuse of discretion in the trial court's denial of a plaintiff's motion to compel the defendant to respond to discovery and continue the hearing on a motion to dismiss); *Dotson v. Contemp. Media, Inc.*, No. W2011-01234-COA-R3-CV, 2012 WL 1868255, at *10 (Tenn. Ct. App. May 23, 2012) ("[W]e conclude that [the] trial court properly exercised its discretion in granting the Appellees' a stay of discovery pending ruling on the motion to dismiss.").

### 8. Conversion to Summary Judgment

Finally, we note EPE's contention that the motions to dismiss were converted to motions for summary judgment because "Defendants' Motions presented the trial court with facts, proof, and issues outside of the pleadings and the trial court did not exclude them." Thus, EPE argues that the motions became summary judgment motions and that EPE should have been provided the opportunity to conduct discovery. However, we cannot agree with EPE's position that the motions were converted to summary judgment motions. A motion to dismiss "is not automatically converted at the time a party files matters outside the pleadings." *England v. Schnur*, No. E2017-00085-COA-R3-CV, 2017 WL 5901019, at *2 (Tenn. Ct. App. Nov. 29, 2017). Rather, "'[a] motion to dismiss is converted to a

- 25 -

motion for summary judgment when the trial court states, or the evidence shows, that it 'considered' matters outside the pleading.'" *Id.* (quoting *Asbury v. Lagonia-Sherman, LLC*, No. W2001-01821-COA-R3-CV, 2002 WL 31306691, at *3 n.1 (Tenn. Ct. App. Oct. 15, 2002)). "'[T]he trial court need not *expressly* state that it has chosen to exclude such matters filed with the motion, but the circumstances may indicate that it excluded such information[.]'" *Id.* at *3 (quoting *Asbury*, 2002 WL 31306691, at *3); *see, e.g.*, *Bartley v. Nunley*, No. E2019-01694-COA-R3-CV, 2020 WL 5110302, at *8 (Tenn. Ct. App. Aug. 28, 2020) ("[W]e cannot agree with [appellant's] contention that because the trial court did not expressly exclude the deposition transcript in its judgment, the motion must be converted to one for summary judgment. The trial court did not mention or reference the deposition transcript whatsoever in its judgment.").

EPE does not cite to the record to demonstrate that any particular document was impermissibly considered by the trial court. The exhibits to the complaint included the Hoops Agreement and the County resolution, but these matters were appropriate for consideration without converting the motion to dismiss into a motion for summary judgment. Tennessee cases "have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Elvis Presley Enterprises, Inc.*, 620 S.W.3d at 322 n.4. We note that there were a few other documents attached to the complaint, but there is nothing in the record to indicate that the trial court relied on them in resolving the motions to dismiss for lack of standing. The trial court's order stated that it was granting the defendants' motions to dismiss "pursuant to Tenn. R. Civ. P. 12.02(6)" because "the Complaint fails to state a claim upon which relief can be granted" and that dismissal was "due to lack of standing based upon the pleadings filed." Although the order did contain one isolated reference to "the entire record," construing the order as a whole, it is clear that the trial court did not consider extraneous evidence such that the motions to dismiss were converted to summary judgment motions. *See Stephens v. Home Depot U.S.A., Inc.*, 529 S.W.3d 63, 73 (Tenn. Ct. App. 2016) ("Despite the reference in this order to 'the entire record,' it is apparent that the trial court intended to resolve the motion to dismiss for failure to state a claim under Rule 12.02(6)."). Thus, the motions to dismiss were not converted to summary judgment motions.

## IV. CONCLUSION

For the aforementioned reasons, the decision of the chancery court dismissing the complaint for failure to state a claim is hereby affirmed and remanded for further proceedings. Costs of this appeal are taxed to the appellants, Elvis Presley Enterprises, Inc.; Guesthouse at Graceland, LLC; and EPPF, LLC, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE